### THE JUNIATA.

(District Court, D. Maryland. January 14, 1922.)

#### No. 917.

1. **Maritime liens ⊙⇒24—Not in issue if subcontractor gave credit to contractor and not to ship.**

    Where a subcontractor gave credit to the contractor and looked to it, and not to the ship, it is unnecessary to inquire whether a subcontractor can acquire a lien upon a ship.

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Maritime liens ⫘17, 29—Subcontractor held not entitled to maritime lien, the contractor not representing the owner.**

Act June 23, 1910, § 5 (Comp. St. § 7787), re-enacted by Merchant Marine Act June 5, 1920, supersedes all provisions of the state statutes so far as they purport to create rights of action enforceable in rem against vessels for repairs, supplies, and other necessaries, and, if a subcontractor ever had a right to a lien therefor on a vessel, it was based upon the contractor's agency for the owner, and cannot now exist, in view of Act June 23, 1910, § 2 (section 7784), which enumerates the persons presumed to have authority from the owner to procure repairs, supplies, and other necessaries, but does not mention the contractor.

In Admiralty. Libel by the S O S Welding Corporation against the steamship Juniata, in which plaintiff claimed a lien which he sought to enforce as a subcontractor; the contractor having gone into bankruptcy. Libel dismissed.

Keech, Deming, Kemp & Carman, of Baltimore, Md., for libelant.
Thaddeus H. Swank, of Baltimore, Md., for respondent.

ROSE, District Judge. The Globe Ship Building & Dry Dock Company, hereinafter called the "contractor," about the 1st of October, 1921, contracted with the claimant, the Merchants' & Miners' Transportation Company, hereinafter called the "owner," to make certain repairs to the latter's steamship, the Juniata, for a price of something less than $1,900. Among them was a certain rather small amount of welding, of the value of less than $100. The contract, however, contained a provision that, if additional welding was found to be needed and ordered, it should be paid for in some circumstances at so much an hour, and under other circumstances at so much per square foot. The contractor had no welding plant of its own, and that fact was known to some of the officials of the owner, although not to others. The contractor invited proposals for welding from two concerns, and the libelant, the S O S Welding Corporation, being the lowest bidder, received the order.

In the course of making the repairs, it was found that very much more welding was needed than was at first supposed, and the contractor was directed to do it. It had the work done by the subcontractor, and the subcontractor rendered a bill therefor to the contractor for $2,379.51. There is no question as to the correctness of this bill, and that the contractor owes it.

The contractor operated a large shipyard, recently constructed at a cost of some millions. After the work on the ship was finished, it assigned to the Commercial Credit Company, for cash, its account against the ship and owner, including therein its charge for the welding done by the subcontractor, which charge was naturally appreciably larger than that made by the subcontractor to it. Shortly thereafter, upon an involuntary petition in bankruptcy, the contractor was adjudicated a bankrupt. The subcontractor thereupon gave notice to the owner that it would claim a lien in rem for the amount of its bill against the ship, and filed its libel to enforce such a claim. The

owner had not at the time it received such notice, and has not now, paid the contractor's bill.

[1] At the hearing some attempt was made to show that, in ordering the welding from the subcontractor, the contractor was acting, not for itself, but as agent for the owner, and that, as the owner had its inspector of welding on the job to see that it was done in a workmanlike manner, and that no excess time was charged for, there was a direct contract between the owner and the subcontractor, as was held in The James H. Prentice (D. C.) 36 Fed. 777. The facts stated do not justify the conclusion sought to be drawn from them, and in short, after seeing and hearing the witnesses, I have no question that the owner made its bargain with the contractor and looked to it, and to no one else, to do the work. The subcontractor extended credit to the contractor, and never thought of seeking to hold any one else liable until bankruptcy intervened. The finding that the subcontractor gave credit to the contractor, and looked to it, and not to the ship, doubtless renders it unnecessary to inquire whether under other circumstances a subcontractor can acquire a lien upon a ship. The Supreme Court, in The Roanoke, 189 U. S. at page 195, 23 Sup. Ct. 491, 47 L. Ed. 770, while noting that it never had occasion to decide the question, recognized that the general consensus of opinion in the state courts and in the inferior federal courts was that labor and materials furnished to a contractor do not constitute a lien upon the vessel, unless at least notice be given to the owner of such claim before the contractor has received the sum stipulated by his contract. It would seem that, if such subcontractor really acquired a maritime lien, such notice could scarcely be necessary to protect it. Ordinarily maritime liens, until they become stale, having once attached to a ship, are unaffected by subsequent transactions of other parties concerning it. I shall not stop to inquire whether the purchase of the contractor's account by the Commercial Credit Company before the latter had any notice of the subcontractor's claim left the subcontractor in the same position as if the owner had paid the claim without notice; for, independently of whether it did or not, the decision will necessarily have to be against the subcontractor.

[2] The cases in which a so-called subcontractor has been held entitled to a lien or to a right in the nature of a lien against the ship appear all to have been cases in which, upon the facts, it was possible reasonably to hold that he was not a subcontractor at all, but had an agreement with the owner, made through the contractor as the owner's agent, and as has been pointed out, that was not the case here, or else where state laws gave such a right to a subcontractor. Since the passage of the fifth section of the act of 1910 (36 Stat. 605; Comp. St. § 7787), re-enacted by the Merchant Marine Act of 1920 (41 Stat. 1006, § 30, subsec. "x"), all the provisions of state statutes are superseded in so far as they purport to create rights of action enforceable in rem against vessels for repairs, supplies, and other necessaries. Moreover, if the right contended for ever existed at all, it was, as Justice Brown in The Roanoke pointed out, upon the theory that the contractor was to be presumed to be the agent of the vessel in the

purchase of such labor and materials, and since the act of 1910 that presumption can hardly be held admissible, for Congress was at pains in section 2 of the act (section 7784) to enumerate the persons who shall be presumed to have authority from the owner to procure repairs, supplies, and other necessaries, and, among persons so enumerated, contractors for ship repairs are not mentioned.

It follows that the libel must be dismissed.