769 F.2d 620
 1987 A.M.C. 926
 FARWEST STEEL CORPORATION, a corporation, Plaintiff,
and
Robert A. Barnes, Inc., et al., Plaintiffs-Intervenors,
and
Shuman Equipment, Inc., Plaintiff-Intervenor-Appellant,
v.
BARGE SEA-SPAN 241, aka Barge Ceres, her tackle, gear and
furnishings, in rem; Lakeview Charters; S.A.
DeSantis, Defendants-Appellees.
FARWEST STEEL CORPORATION, a corporation, Plaintiff-Appellant,
and
Robert A. Barnes, Inc., a corporation, et al., Plaintiffs-Intervenors,
v.
BARGE SEA-SPAN 241, aka Barge Ceres, her tackle, gear and
furnishings, in rem; Lakeview Charters; S.A.
DeSantis; and West Coast Charters,
Inc., a corporation,
Defendants-Appellees.
 Nos. 84-3754, 84-3755.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 9, 1984.
Reargued July 22, 1985.
Decided Aug. 23, 1985.
 
 Lloyd W. Weisensee, Williams, Fredrickson, Stark, Hiefield, Norville & Weisensee, P.C., Portland, Or., for plaintiff-appellant.
 C. Kent Roberts, Alex L. Parks, Parks, Montague, Allen & Greif, Portland, Or., for defendants-appellees.
 Appeal from the United States District Court for the District of Oregon.
 Before FARRIS, ALARCON, and BEEZER, Circuit Judges.
 FARRIS, Circuit Judge:
 
 
 1
 Farwest Steel and intervenor corporations appeal the judgment of the U.S. District Court for the District of Oregon, Frye, J., which refused to grant Farwest a maritime lien on the Barge SEA-SPAN 241. Farwest contends that because it furnished steel to the Barge at the request of a repair contractor hired by the Barge's owner, West Coast Charters, Farwest is entitled to a lien under either the federal Maritime Lien Act, 46 U.S.C. Secs. 971-975, or the Washington vessel lien law, RCW 60.36.010 et seq.
 
 
 2
 Farwest commenced an action in rem against the Barge in the district court. Farwest also brought an action in personam against West Coast, the Barge's owner; S.A. DeSantis, principal of West Coast; Lakeview Charters, the predecessor owner of the Barge; and Nichols, the repair contractor. West Coast made a general appearance and counterclaimed against Farwest for wrongful arrest of the Barge. In preliminary rulings, the district court quashed the arrest of the Barge, and dismissed the claims against DeSantis and Lakeview.
 
 
 3
 In the remaining actions against Nichols and West Coast, the district court held that it had admiralty jurisdiction based on the existence of a maritime contract. 28 U.S.C. Sec. 1333. The court also held that it continued to have in rem jurisdiction to decide Farwest's lien claim, despite the quashing of the arrest and the subsequent sale of the Barge by West Coast to a nonparty, The Carnation Company. The court then ruled that Farwest and intervenor corporations did not have a lien under either the Maritime Lien Act, 46 U.S.C. Secs. 971-975, or the Washington vessel lien law. RCW 60.36.010. It dismissed the claims against the Barge and West Coast's counterclaim for wrongful arrest. Farwest timely appeals.
 
 
 4
 Farwest also brought suit in the Superior Court of Clark County, Washington, to enforce state chattel and vessel liens against West Coast. That court, upheld by the Washington Supreme Court, see Farwest Steel Corp. v. DeSantis, 102 Wash.2d 487, 687 P.2d 207 (1984), cert. denied, --- U.S. ----, 105 S.Ct. 2024, 85 L.Ed.2d 305 (1985), dismissed Farwest's claim because federal maritime law had preempted the state liens.
 
 
 5
 I. Subject matter jurisdiction.
 
 
 6
 The district court had admiralty jurisdiction if it was adjudicating either a maritime lien, see Alyeska Pipeline Service Co. v. Vessel Bay Ridge, 703 F.2d 381, 384 (9th Cir.1983), cert. dismissed, --- U.S. ----, 104 S.Ct. 3526, 82 L.Ed.2d 852 (1984), or a contract relating to the repair of an already constructed vessel. Owens-Illinois, Inc. v. United States District Court, 698 F.2d 967, 970 (9th Cir.1983); 28 U.S.C. Sec. 1333. Thus, even if we find that Farwest did not have a maritime lien on the Barge, the underlying contractual claim will support the district court's admiralty jurisdiction. See Aktieselskabet Fido v. Lloyd Braziliero, 283 Fed. 62, 73-74 (2d Cir.), cert. denied, 260 U.S. 737-38, 43 S.Ct. 97, 67 L.Ed. 489 (1922); Reichert Towing Line, Inc. v. Long Island Machine & Marine Constr. Co., 287 Fed. 269 (E.D.N.Y.1922) (subcontractor providing supplies directly to vessel would "no doubt" have a maritime contract); 1 Benedict on Admiralty Sec. 106, at 7-17, 18 (1983) (admiralty jurisdiction can arise from either a claim to enforce a maritime lien or "any claim in respect of the furnishing of repairs, supplies ... or other necessaries to a vessel."). We therefore have jurisdiction over the timely filed appeal from the district court. 28 U.S.C. Sec. 1291.
 
 
 7
 II. The in rem jurisdiction of the district court.
 
 
 8
 Before considering the merits of Farwest's lien claim, we must determine whether the district court retained jurisdiction over the Barge even after it quashed the vessel's arrest and permitted the Barge to be removed from the court's territorial waters.
 
 
 9
 Under the prevailing rule, the release or removal of the res from the control of the court will terminate jurisdiction, unless the res is released accidentally, fraudulently, or improperly. United States v. $57,480.05 United States Currency and Other Coins, 722 F.2d 1457, 1458 (9th Cir.1984); United States v. Vertol H21C Reg. No. N8540, 545 F.2d 648, 650 (9th Cir.1976). Because the Barge began plying the waters between Washington and Hawaii shortly after it was sold to The Carnation Company on April 23, 1982, and there is no allegation that it was released improperly, under this rule the district court would have been deprived of jurisdiction midway through its proceedings. The court's ensuing judgment that Farwest was not entitled to a lien would therefore be without a jurisdictional base, and we would only have appellate jurisdiction to review the dismissal of Farwest's in personam claim. See Alyeska Pipeline, 703 F.2d at 384; American Bank of Wage Claims v. Registry of District Court of Guam, 431 F.2d 1215, 1218 & n. 3 (9th Cir.1970).
 
 
 10
 The rule that the vessel be present in order to preserve in rem jurisdiction is founded on "a long-standing admiralty fiction that a vessel may be assumed to be a person for the purpose of filing a lawsuit and enforcing a judgment." See Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 22-23, 80 S.Ct. 1470, 1473, 4 L.Ed.2d 1540 (1960). This fiction, however, has been referred to as "archaic", "an animistic survival from remote times," "irrational", and "atavistic", 364 U.S. at 23, 80 S.Ct. at 1473; and in several cases where vessels have been removed from their territorial reach, courts have "refused to myopically apply this fiction" of in rem jurisdiction. Treasure Salvors v. Unidentified Wrecked and Abandoned Sailing Vessel, 569 F.2d 330, 334 (5th Cir.1978); see Continental Grain, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (permitting transfer of a claim on an in rem admiralty action to a district in which the res was not present); Inland Credit Corp. v. M/T Bow Egret, 552 F.2d 1148, 1152, reh'g denied, 556 F.2d 756 (5th Cir.1977); Reed v. Steamship Yaka, 307 F.2d 203 (3d Cir.1962), rev'd on other grounds, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963).
 
 
 11
 These courts have derived jurisdiction to review an in rem decision from the existence of either consent or in personam jurisdiction over a shipowner whose other contacts with the forum satisfied "traditional notions of fair play and substantial justice," International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). When a claimant has consented to, or is otherwise subject to the court's in personam jurisdiction, these courts have suggested that due process is not violated by also finding in rem jurisdiction. Continental Grain, 364 U.S. at 22-23, 80 S.Ct. at 1472-73; Reed, 307 F.2d at 204-05; The Willamette, 70 Fed. 874 (9th Cir.1895).
 
 
 12
 In all these cases, of course, the res, while beyond the court's territorial jurisdiction, was owned by a party actually before the court, over whom the court already held in personam jurisdiction. In this case, both Farwest and West Coast would have us appropriate a res not only from a location beyond the court's territorial realm, but from a nonparty over whom the district court never had personal jurisdiction. We need not resolve this question since counsel at oral argument indicated that he had authority to speak for Carnation Company, the nonparty owner, and that Carnation had actual knowledge of the lien claim and had consented to in rem jurisdiction over the Barge. Alex L. Parks is an attorney at law. Parks approved and endorsed a pretrial order which says, in part:
 
 
 13
 On or about April 23, 1982 West Coast Charters sold the barge CERES to The Carnation Company. There will be no claim that the sale to The Carnation Company was a sale to a purchaser without notice. The Carnation Company took the barge CERES subject to the claims of liens, if any, asserted herein and West Coast Charters has agreed to indemnify and hold The Carnation Company harmless from all claims of liens, if any. This case will be tried as if the barge had not been sold to The Carnation Company. If the Court enters a judgment in rem against the barge CERES in favor of the plaintiff and plaintiff-intervenors and the judgment is not paid, the Court may enter an order for seizure of the barge CERES and foreclosures of the liens.
 
 
 14
 (Emphasis added). Parks endorsed the pretrial order on behalf of defendants, Barge Sea Span 241, aka Barge CERES, her tackle, gear and furnishings, in rem; West Coast Charters, Inc.; and Nichols Boat & Barge Builders, Inc.
 
 
 15
 The consent to in rem jurisdiction troubled us because Carnation was not a party to the proceedings. When combined with the fact that during oral argument Parks acknowledged actual notice of the lien--thus removing any due process concerns about notice--we find from the record that Carnation consented to in rem jurisdiction. The district court retained jurisdiction over the Barge throughout its proceedings, and we have jurisdiction to review its in rem judgment.
 
 
 16
 III. Does Farwest have a maritime lien under the federal Maritime Lien Act?
 
 
 17
 The federal Maritime Lien Act grants a maritime lien to any person 1) furnishing repairs, supplies, or other necessaries 2) to any vessel 3) "upon the order of the owner of such vessel, or of a person authorized by the owner." 46 U.S.C. Sec. 971. The district court found that Farwest and intervenor corporations did not qualify for a federal lien because the appellants failed to satisfy the third requirement of section 971: they had not acted upon the order of a person authorized to purchase steel on the owner's behalf, either as an agent or as a contractor.
 
 
 18
 Our analysis must proceed under the Lien Act's presumption in favor of materialmen for all repairs, supplies, and other necessaries ordered. The Oceana, 244 Fed. 80, 82 (2d Cir.), cert. denied sub nom. Morse Dry Dock & Repair Co. v. Conron Bros. Co., 245 U.S. 656, 38 S.Ct. 13, 62 L.Ed. 533 (1917); see Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co., 310 U.S. 268, 273, 60 S.Ct. 937, 940, 84 L.Ed. 1197 (1940). This presumption was enhanced in 1971 when Congress deleted the requirement that materialmen inquire about the existence of any no-lien clauses before furnishing supplies to a contractor. See Atlantic & Gulf Stevedores v. M/V Grand Loyalty, 608 F.2d 197, 201-02 (5th Cir.1979) (legislative history of 1971 amendments requires a liberal application of Lien Act); Ray, Maritime Contract Liens, 47 Tul.L.Rev. 587, 591 (1973). Applying the clearly erroneous standard of review to the trial court's finding that Nichols was not a "person authorized by the owner" of the Barge to order steel from Farwest, see United States v. McConney, 728 F.2d 1195 (9th Cir.) (en banc), cert. denied, --- U.S. ----, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984) (mixed questions of law and fact in which the factual inquiry predominates are subject to clearly erroneous review), we reverse and remand.
 
 
 19
 Of the three elements of section 971, the first two are not in real dispute here. The term "necessaries" under section 971 refers to "supplies which are necessary to keep the ship going," Signal Oil & Gas, 310 U.S. at 280, 60 S.Ct. at 943 (1940). The steel that Farwest supplied was essential for the Barge's repairs and eventual return to service. See Farrell Ocean Services, Inc. v. United States, 681 F.2d 91, 92-93 (1st Cir.1982); Equilease Corp. v. M/V Sampson, 568 F.Supp. 1259, 1263 (E.D.La.1983), aff'd, 742 F.2d 852 (5th Cir.1984) (terms of section 971 should be given a broad meaning, and include supplies or services "reasonably needed in a ship's business"). The record satisfies us that the trial court correctly found that the steel was supplied "to" the Barge. It was brought to Nichols' yard and delivered to designated areas for incorporation into the Barge. See The Yankee, 233 Fed. 919, 925 (3d Cir.1916), cert. denied sub nom., Rivers & Harbors Improvement Co. v. Latta, 243 U.S. 649, 37 S.Ct. 476, 61 L.Ed. 946 (1917) (delivery of supplies to vessel's side meets statutory standard).
 
 
 20
 The dispositive issue is whether the third element of section 971 was satisfied: was Nichols a "person authorized by the owner" of the Barge to order steel from Farwest? Under 46 U.S.C. Sec. 972, "persons authorized by the owner" shall be presumed to include "any person to whom the management of the vessel at the port of supply is intrusted." The district court concluded that (1) Nichols was not a person "to whom the management of the vessel ... is entrusted," and (2) that Nichols was a general contractor who ordered steel on its own rather than on the barge owner's behalf. Because we reverse and remand on the basis of the court's second conclusion, we need not determine whether Nichols was entrusted with management of the vessel.
 
 
 21
 Courts have refused to grant a maritime lien to a subcontractor who has furnished supplies to the primary contractor responsible for servicing a ship. "[B]ecause it can rarely be shown that the contractor was not acting as a contractor but as the agent of the owner, a subcontractor will normally not be entitled to a lien since he extends credit to the contractor and not the ship." AAB Electric Industries, Inc. v. Control Masters, Inc., 1980 AMC 1795, 1801 (E.D.La.1980) (quoting 2 Benedict on Admiralty, 3-39, n. 2 (7th Ed.1975)). If Nichols was an independent contractor free to make his own arrangements with suppliers, then his steel purchases cannot later be assessed against the barge--unless the seller of the steel relied on the barge as security. Id.; see also Inland Credit Corp., 552 F.2d at 1152 (lien available if the advance was made "on the credit of the ship"); The Juniata, 277 Fed. 438, 440 (D.Md.1922). Where the supplier relies on the contractor and not the barge as a source of payment, a maritime lien will be denied. 277 Fed. at 440; see In re Marine Transit Corp., 94 F.2d 7, 9 (2d Cir.1938); see also W.A. Marshall & Co. v. S.S. President Arthur, 279 U.S. 564, 570-71, 49 S.Ct. 420, 422, 73 L.Ed. 846 (1929).
 
 
 22
 Here, there are facts from which the district court could have concluded and did in fact conclude that despite concern about Nichols' ability to pay for the steel, Farwest was relying on Nichols for repayment, and that the barge's owner viewed Nichols as an independent contractor. After delivering the steel to Nichols' shipyard pursuant to Nichols' orders, Farwest invoiced Nichols alone for each order of steel. At the end of the month, Farwest sent to Nichols alone a statement of monthly activity. Nichols paid on the basis of statement balances. Pursuant to the contract between Nichols and the original barge owner, Nichols was to keep the owner informed of all expenses, invoices, and deliveries of steel. In fact, this was not done. Neither the originals nor copies of the invoices and statements of monthly activity were sent by either Nichols or Farwest to the barge owner. Nonetheless, West Coast paid Nichols for all supplies furnished to the barge and for all work performed by Nichols.
 
 
 23
 On the other hand, prior to dealing with Nichols, Farwest consulted a lawyer in an attempt to insure itself against the risks of dealing with Nichols. As the district court noted, Farwest then took numerous steps to segregate and identify the steel it sold to Nichols "so as to be able to prove any lien that might arise." Similarly, the barge owner also attempted to hedge against any losses by a provision in its repair contract providing that Nichols would pay all suppliers and keep the vessel free from liens. These facts suggest that Farwest relied on the Barge and that West Coast viewed Nichols as an agent whose expenses could ultimately be attributable to West Coast.
 
 
 24
 Whether Farwest placed any reliance on the Barge is a question of fact. We must remand to resolve that factual issue. If the district court finds that Farwest relied exclusively on Nichols, under "the Juniata rule" it must deny Farwest a federal lien. See AAB Electric Industries, Inc., 1980 AMC at 1802 ("[h]aving relied solely upon the credit of Control Masters in performing the work on the generator, AAB Electrical did not obtain a maritime lien"); The Juniata, 277 Fed. 438, 440 (D.Md.1922) ("the subcontractor extended credit to the contractor, and never thought of seeking to hold any one else liable ... the subcontractor gave credit to the contractor, and looked to it, and not to the ship"); The Juniata, 277 Fed. 441, 442 (D.Md 1922) ("I find, as a matter of fact, that the subcontractor contracted solely with the contractor and extended credit solely to it").[1]
 
 
 25
 However, if the district court finds that Farwest placed some reliance on the Barge, under the statutory presumption in favor of materialmen under the Lien Act, see Atlantic & Gulf Stevedores, 608 F.2d at 201-02 (5th Cir.1979); Inland Credit Corp., 552 F.2d at 1152 (citations omitted); The Oceana, 244 Fed. 80, 82 (2d Cir.), cert. denied sub nom. Morse Dry Dock & Repair Co. v. Conron Bros. Co., 245 U.S. 656, 38 S.Ct. 13, 62 L.Ed. 533 (1917), Farwest is entitled to a federal lien. See Sands Const. Co. v. United Virginia Bank, --- F.Supp. ----, ---- - ---- 1985 A.M.C. 1165, 1169-70 (E.D.Va.1984) (citing The Defiance, 3 F.2d 48, 51 (E.D.N.C.1924); Diaz v. The S.S. Seathunder, 191 F.Supp. 807, 816 (D.Md.1961)); see also Farrell Ocean Services, 681 F.2d 91 (granting lien to subcontractor who supplied transportation services to repair contractor); Shaw v. 46-foot ChrisCraft Camelot, 391 F.Supp. 1026 (W.D.Wa.1975); The Ark, 17 F.2d 446 (S.D.Fla.1926); The Schuylkill, 249 Fed. 781, 782 (E.D.N.Y.1918). In that case, having retained in rem jurisdiction over the Barge despite the vessel's removal, the district court is authorized to arrest the Barge and foreclose the lien of Farwest and intervenor corporations.
 
 
 26
 REVERSED AND REMANDED.
 
 
 
 [1]
 We do not reach the issue whether Farwest is entitled to a lien under Washington state law. After the parties filed their briefs, the Washington Supreme Court determined that, assuming that state lien statutes were not preempted by federal law, Farwest would not be entitled to a lien under state law. Farwest Steel Corp. v. DeSantis, 102 Wash.2d 487, 491-92, 687 P.2d 207 (1984), cert. denied, --- U.S. ----, 105 S.Ct. 2024, 85 L.Ed.2d 305 (1985)