**PRIDE SHIPPING CORPORATION,**
Plaintiff–Appellant,

v.

**TAFU LUMBER COMPANY,**
Defendant–Appellee.

No. 88–4273.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 7, 1989.

Decided March 19, 1990.

Robert N. Windes, LeGros, Buchanan, Paul & Whitehead, Seattle, Wash., for plaintiff-appellant.

Stephen C. Smith, Lane Powell Moss & Miller, Seattle, Wash., for defendant-appellee.

Before CANBY, WIGGINS and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

Pride Shipping Corp. ("Pride") filed this action in admiralty against Tafu Lumber

Company ("Tafu"). The action was based upon a claim that Tafu had, among other things, improperly allowed a ship owned by Pride to sustain damage after it was chartered to Tafu. Pride obtained an attachment of the bunkers of another ship chartered by Tafu, which it found within the Western District of Washington. It did so for the purported purpose of obtaining jurisdiction over Tafu in that district. At a post-attachment hearing the district court ordered release of the attachment, because Tafu claimed to be within the district, agreed to accept service, and agreed to make a general appearance. Pride did not obtain a stay of that order, but filed this appeal from it.

We dismiss the appeal on grounds that the issue is now moot, even though we otherwise have jurisdiction.

## BACKGROUND FACTS

Pride is a Greek corporation which owns the M/V Oinoussian Pride. It chartered that to Tafu. Tafu is a Hong Kong corporation. It claims that it has operated through TAT USA, Inc. in Everett, Washington since 1983. Tafu is in the business of exporting wood products and lumber from the United States to countries in East Asia. It negotiates charters for vessels, while TAT USA, Inc. negotiates the purchase and sale of cargo.

While the M/V Oinoussian Pride was under charter to Tafu, it encountered Typhoon Agnes and sustained damage. It was repaired, whereupon Pride demanded that Tafu post a $1,000,000 bond to cover the damage to the vessel. Tafu refused and, pursuant to the provisions of the charter, demanded arbitration in London, England. For its part, Pride filed an action in the English High Court of Justice. Arbitration was instituted in London. Pride also filed an action in the Southern District of Alabama and seized the bunkers of another vessel.

Not being content with these actions, Pride learned that Tafu owned bunkers on the M/V Nova Eagle which was at the Port of Olympia, Washington. That is within the territory covered by the United States District Court for the Western District of Washington. Purporting to have exercised due diligence, Pride claimed it could not locate Tafu within that district. It thereupon applied for and obtained a writ of attachment of those bunkers pursuant to Federal Rule of Civil Procedure Supplemental Rules for Certain Admiralty and Maritime Claims B(1) ("Rule B(1)").

The attachment was levied on October 6, 1988, and on October 7, 1988 Tafu moved to vacate that attachment. The district court heard the motion that day, and ordered the vacation. In so doing, the district court found that even if Pride had exercised due diligence (a fact to which Tafu stipulated for the purposes of that hearing only), since Tafu was either located within the district or could be served once counsel and a Tafu representative had agreed to accept service of process, the attachment should be dissolved. Pride then asked if the district court would certify the issue for appeal, and the district court said, among other things, that it would not. The court said, "There are some specific requirements to get a stay that have to be met. I can't recite them off the top of my head, but they are in the Rules." The court then declared that its order was effective forthwith.

The M/V Nova Eagle departed two days later, along with its bunkers, which have been used up by now. On October 14, 1988, Pride finally got around to asking for an order granting a stay. That was denied. The court noted that Pride did not even request the setting of a supersedeas bond at that time. In the meantime, Tafu had accepted personal service and had entered its general appearance in the action. That was on October 11, 1988. This appeal was noticed on October 14, 1988.

Tafu claims that Pride has attempted to appeal from a unappealable order, and that this court, therefore, does not have jurisdiction. It also claims that the attachment issue is now moot.

## STANDARD OF REVIEW AND CONSIDERATION OF JURISDICTIONAL AND MOOTNESS ISSUES

We review findings of fact made by the district court for clear error. *United*

*States v. McConney*, 728 F.2d 1195, 1202 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). To the extent that the district court made factual determinations regarding the presence of Tafu within the district, the clearly erroneous standard applies. *Oregon v. Tug GO GETTER*, 398 F.2d 873, 874 (9th Cir.1968).

We review questions of law de novo. *United States v. McConney*, 728 F.2d at 1201.

Questions of our own jurisdiction on appeal are issues on which we exercise our own independent judgment. *See Stevedoring Servs. of Am. v. Ancora Transport., N.V.*, 884 F.2d 1250, 1252 (9th Cir.1989).

## APPELLATE JURISDICTION [1]

■ In general, we do not have jurisdiction to consider a decision of the district court when no final judgment has been entered and the district court has refused to certify the issue to us. *See* 28 U.S.C. § 1291 and 28 U.S.C. § 1292(b). *See also* Fed.R.Civ.P. 54(b). This salutary rule fosters the principle that piecemeal appeals are inappropriate, since they can add delay and expense to proceedings, while calling upon appeals courts to decide issues that ultimately need not have been decided at all. *See generally* 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* §§ 3905–3919 (1976).

■ An exception to this rule is the collateral order doctrine, which was outlined by the Supreme Court in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). Under that doctrine, an order may be reviewed if it "appears to fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of

the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* at 546, 69 S.Ct. at 1225–26. As the Court stated in *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978) (citations omitted), in order to come within that small class, "the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment."

We must determine whether orders vacating Rule B(1) attachments fall within that small class, when personal jurisdiction is later obtained through a general appearance.[2] The Supreme Court went a long way toward answering this question when it decided *Swift & Co. Packers v. Compania Colombiana Del Caribe*, 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206 (1950). In *Swift*, the plaintiff filed a libel in personam and obtained quasi in rem jurisdiction over the defendants by attaching a vessel which the defendants, or one of them, owned. One defendant, Transmaritima, had purported to transfer the vessel to the other defendant, Del Caribe, and plaintiffs alleged that the transfer was in fraud of creditors. After the attachment was levied, Transmaritima made an appearance, as did Del Caribe. They raised issues regarding the merits of the claim. Transmaritima also asked for a limitation of its liability, and Del Caribe claimed that the transfer was not fraudulent. *See Swift & Co. Packers v. Compania Colombiana Del Caribe*, 175 F.2d 513, 515 (5th Cir.1949), *rev'd*, 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206 (1950). While the matter is not entirely clear, the courts do not seem to have treated these appearances as being general appearances. Upon motion of the defendants, the district court issued an order vacating the attachment. The court of appeals affirmed. The Supreme Court granted review and first

---

1. There is no question that the district court has jurisdiction over this matter. 28 U.S.C. § 1333(1).

2. Rule B(1) reads as follows, in pertinent part: "With respect to any admiralty or maritime

claim in personam a verified complaint may contain a prayer for process to attach the defendant's goods and chattels, or credits and effects in the hands of garnishees to be named in the process to the amount sued for, if the defendant shall not be found within the district."

considered the question of its own jurisdiction over the appeal of the order, since a final judgment had not yet issued in the case. It declared that the order on the motion was squarely within the reasoning of *Cohen.* As the Court noted:

Appellate review of the order dissolving the attachment at a later date would be an empty rite after the vessel had been released and the restoration of the attachment only theoretically possible.... Under these circumstances the provision for appeals only from final decisions in 28 U.S.C. § 1291 should not be construed so as to deny effective review of a claim fairly severable from the context of a larger litigious process....

*Swift,* 339 U.S. at 689, 70 S.Ct. at 865 (citations omitted).

■ We have taken the same position. *See Stevedoring Servs. of Am. v. Ancora Transp., N.V.,* 884 F.2d at 1252; *Polar Shipping Ltd. v. Oriental Shipping Corp.,* 680 F.2d 627, 630 (9th Cir.1982). *See also Interpool Ltd. v. Char Yigh Marine (Panama), S.A.,* 890 F.2d 1453, 1457–58 (9th Cir.1989). These cases may, at first blush, seem to dispose of the issue, but Tafu asserts that they dealt with situations where jurisdiction was, and continued to be, quasi in rem, so that release of the attachment would moot the whole case. Thus, so the argument goes, appealability was proper since the district court order was fatal in those cases, but a different result should obtain when a general appearance has been made. We disagree.

It is certainly clear enough that both *Stevedoring Servs. of Am.* and *Polar Shipping Ltd.* were quasi in rem cases, and it is probable that *Swift* was also. However, nothing in any of those cases suggests that a different result would have been reached had a general appearance been made. In fact, Tafu's approach assumes that the only purpose of the attachment is to assure jurisdiction. Accordingly, that argument rests on an improper assumption. As the Supreme Court noted in *Swift:*

The process of foreign attachment is known of old in admiralty. It has two purposes: to secure a respondent's ap-

pearance and to assure satisfaction in case the suit is successful.... While the process may be utilized only when a respondent is not found within the jurisdiction, an attachment is not dissolved by the subsequent appearance of respondent.

339 U.S. at 693, 70 S.Ct. at 867 (citations omitted).

If it were the case that jurisdiction alone was the sole goal, then an appearance would seem to be sufficient to cause a dissolution of the attachment. That is precisely the point of view that the Supreme Court rejected. This explains why the Supreme Court so readily found that orders which involved the vacation of attachments come within the rationale of *Cohen.* If only jurisdiction were involved, it could be argued that the *Cohen* factors would not apply once an appearance was made, because no issue would be conclusively determined, the issue would not be independent at that point and the jurisdictional issue could easily be reviewed on direct appeal, if it were raised. That would be true whether the defendant filed an appearance to contest the merits of the claim, or filed a general appearance. However, security is another matter entirely. The order of vacation would conclusively remove the security—witness our case, where the security has sailed out of sight and been burned in the engines of the M/V Nova Eagle. The security issue is separate from the merits. Finally, a later review would not be terribly helpful in restoring that security. While it is true that one may feel more secure if there is personal jurisdiction over the defendant, that is not the same as security in the sense we are using it here. In short, the loss of the security is final, regardless of the outcome of the case, and that favors an early review of the district court's decision.

Our conclusion is further bolstered by the fact that, when viewed in the light of their dual purpose, Rule B(1) attachments are much like other provisional remedies, and appeals from orders denying those

remedies are generally permitted.[3] *E.g.,* 28 U.S.C. § 1292(a)(1) (preliminary injunctions); *Beefy King Int'l, Inc. v. Veigle,* 464 F.2d 1102, 1104 (5th Cir.1972) (per curiam) (lis pendens); *American Oil Co. v. McMullin,* 433 F.2d 1091, 1096 (10th Cir.1970) (writ of attachment and garnishment); *Suess v. Stapp,* 407 F.2d 662, 663 (7th Cir.1969) (lis pendens). We do note that in *21 Turtle Creek Square, Ltd. v. New York State Teachers' Retirement Sys.,* 404 F.2d 31 (5th Cir.1968), the court denied the right to appeal from a lis pendens decision because the plaintiff basically stipulated that the security was not needed. That is an unusual situation, and the situation is not replicated here. In any event, we doubt that it would normally be wise to decide the jurisdictional question itself based upon an analysis of the need for security in the particular case. Analytical clarity militates for keeping the issues separate when it is possible to do so.

Tafu, however, points to *Pacific Hawaiian Lines, Inc. v. Ol–Mar Marine, Inc.,* 1983 A.M.C. 2347 (W.D.Wash.1981), to support its claim. That district court case is, indeed, contrary to the rule we are enunciating today, for that court declared that no appeal from an order vacating an attachment was proper once a general appearance was made. However, that decision was based upon the idea that, "[t]he purpose of Rule B is to provide a means for the acquisition of *quasi in rem* jurisdiction.... Once personal jurisdiction is obtained, the need for *quasi in rem* jurisdiction disappears." 1983 A.M.C. at 2349. As we have already shown, that premise is in conflict with *Swift.* Moreover, if quasi in rem jurisdiction is first acquired over a defendant, we fail to see any particular reason why that jurisdictional base should disappear simply because another ground of jurisdiction has also become available. There is nothing incompatible between those concepts. There are very good reasons for maintaining quasi in rem jurisdiction over a defendant who, absent the attachment, could not be brought before the court in the first place.

We, therefore, hold that where a Rule B(1) attachment is vacated, we have jurisdiction to hear an appeal from that collateral order, even if a general appearance has been made by the defendant.

## MOOTNESS

■ Tafu next asserts that the appeal of this issue is moot. We agree.

As we have pointed out, Pride did obtain quasi in rem jurisdiction over Tafu, but Tafu has since made a general appearance. In the interim, the security was released. It is clearly beyond the jurisdiction of this court, and can never return, since it has now become energy and residual products of combustion.

In *American Bank of Wage Claims v. Registry of the Dist. Court of Guam,* 431 F.2d 1215, 1218 (9th Cir.1970), we stated:

> This court, with others, has held that in an *in rem* admiralty proceeding where a vessel is the *res* and no stay of execution has been applied for, the release or removal of the vessel from the jurisdiction of the court destroys *in rem* jurisdiction and renders moot any appeal from decisions of the trial court concerning the vessel.

*American Bank* did deal with an in rem action, but the principle for which it stands is just as applicable here. What Pride was entitled to, if anything, was an attachment of the bunkers of the M/V Nova Eagle. Once the bunkers were gone, that right to attach left with them. Pride, however, claims that our decisions in *Polar Shipping Ltd.* and *Teyseer Cement Co. v. Halla Maritime Corp.,* 794 F.2d 472 (9th Cir. 1986), are to the contrary. They are not. In *Polar Shipping Ltd.,* we dealt with a situation where the res remained under attachment and we noted that the controversy remained live because of that attachment. 680 F.2d at 634. Of course it did; there is nothing extraordinary about that result. Similarly, Pride's citation of *Teyseer* is wide of the mark. In *Teyseer,* the

---

**3.** The similarity is underscored by the discussion in *Polar Shipping Ltd.* and especially in the dissenting opinion in that case. 680 F.2d at 642–45 (Byrne, J., dissenting).

district court had vacated an attachment and had held that a forum selection clause required it to dismiss the action. The plaintiff appealed but, like Pride, it failed to obtain a stay or file a supersedeas bond. Jurisdiction was quasi in rem. We succinctly stated our conclusion in *Teyseer*, 794 F.2d at 478, as follows:

> We hold that when, as here, a plaintiff (1) asserts no basis for personal jurisdiction over a defendant other than the defendant's appearance, secured by a Rule B attachment; (2) the district court dismisses the action and releases the security; and (3) the defendant fails to obtain a stay of execution of the judgment or to post a supersedeas bond, the district court has been rendered powerless to impose a judgment in the event of a remand.

Nothing in *Teyseer*'s holding, or in our discussion in that case, suggested that an appeal of an attachment issue could not be moot if general jurisdiction had been obtained. On the contrary, we merely declared that absent quasi in rem jurisdiction, the whole case was moot and nothing further could be decided. This distinction was clearly recognized in *Trans–Asiatic Oil Ltd., S.A. v. Apex Oil Co.*, 804 F.2d 773 (1st Cir.1986). That court noted that the mere loss of quasi in rem jurisdiction would not moot an appeal, since the parties had stipulated to general jurisdiction. *Id.* at 778–79. Similarly, in the case at hand, we agree that general jurisdiction over the case remains. It is only the attachment issue which is now moot, since neither we nor the district court can order reattachment of the bunkers. One issue in a case can become moot, even if the rest of the controversy remains alive. *University of Texas v. Camenisch*, 451 U.S. 390, 394, 101 S.Ct. 1830, 1833, 68 L.Ed.2d 175 (1981).

Pride next argues that since there is personal jurisdiction, we could order the posting of a bond or other money in lieu of the bunkers themselves. It, however, cites no persuasive authority for that proposition. While it may be true that in some instances we can take further action where the res is released or removed accidentally, fraudulently, or improperly, that exception does not help Pride. As we said in *Farwest Steel Corp. v. Barge Sea–Span 241*, 769 F.2d 620, 621 (9th Cir.1985) (citations omitted): "Under the prevailing rule, the release or removal of the *res* from the control of the court will terminate jurisdiction, unless the *res* is released accidentally, fraudulently, or improperly." That was a case under Rule C, but as we noted in *Stevedoring Servs. of Am.*, 884 F.2d at 1253, we apply the same concept to Rule B actions. In *Stevedoring Servs. of Am.*, we then went on to state that "[t]he exception to the rule does not apply here as SSA does not allege that the res was released accidentally, fraudulently or 'improperly' in the sense that it was defrauded. 'Improper' here does not mean error by the district court." *Id.* Pride is in the same position. It, too, cannot point to any impropriety in the release of the attached bunkers, other than a claimed mistake by the district court.

Pride then claims that Rule E(6) of the Federal Rules of Civil Procedure Supplemental Rules for Admiralty and Maritime Claims, allows us to order the posting of new security because it states that "if the surety shall be or become insufficient, new or additional sureties may be required on motion and hearing." That rule, however, is designed to require new sureties when existing sureties have, for some reason, become unreliable. It has no application to a case like the one before us, where the res itself has been released, and nothing, whether secured by sureties or not, has been put in its place.

Pride finally asserts that since it sought a stay, the case should not be treated as moot. It cites *Teyseer* for that proposition, but *Teyseer* said no such thing. *Teyseer* merely observed that no stay had been sought. 794 F.2d at 475 and 478. The same observation applies here. Pride did not properly seek a stay. At the hearing before the district court Pride merely asked that the vacation issue be certified. The district court pointed out that Pride had not properly asked for a stay. Pride then sat on its hands while the res departed the jurisdiction. After the res was gone, Pride finally made its formal request for a stay and, even then, it did not address the bond

question. It never sought a stay from this court. Moreover, once Pride allowed the res to leave, it could not rectify the matter by posting a bond. The bond would not reconfer the lost quasi in rem jurisdiction. *See Stevedoring Servs. of Am.*, 884 F.2d at 1255. Pride has lost its Rule B(1) security, and no matter how desperately it wants some new form of security, it is not entitled to that. That point was forcefully made in *Integrated Container Serv., Inc. v. Starlines Container Shipping Ltd.*, 476 F.Supp. 119, 122 (S.D.N.Y.1979).

Therefore, we hold that since the attachment was vacated and neither the res nor any substitute for it is within the district, the issue of whether the vacating order was proper or not is now moot, and this appeal must be dismissed.

## CONCLUSION

This court does have jurisdiction over this appeal from a collateral order vacating a Rule B(1) attachment, despite the fact that the defendant has now made a general appearance in the action. However, where, as here, the res that was attached is no longer in the district and the plaintiff neither properly sought nor obtained a stay of the district court's release order, the issue of the propriety of that release is moot.

APPEAL DISMISSED AS MOOT.