IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 93-8123

_____


SIERRA CLUB,

                              Plaintiff-Appellee,

and

GREEN VALLEY SPECIAL UTILITY DISTRICT, ET AL.,

                              Intervenor-Plaintiffs-
                              Appellees,

                    versus

BRUCE BABBITT, Etc., ET AL.,

                              Defendants-Intervenors-
                              Defendants-Appellants,

and

UNITED SERVICES AUTOMOBILE ASSOCIATION, ET AL.,

                              Intervenors-Defendants-
                              Appellants,


_____

        Appeals from the United States District Court for
              the Western District of Texas
_____

                    July 2, 1993

Before REAVLEY and GARWOOD, Circuit Judges, and LAKE[1], District
Judge.

REAVLEY, Circuit Judge:

_____

     [1] District Judge of the Southern District of Texas, sitting
by designation.

Because the district court's judgment imposes no injury upon the parties moving this appeal, no case or controversy remains. Lacking jurisdiction, we dismiss.

The Sierra Club sued the United States Fish and Wildlife Service and Interior Secretary Lujan (collectively FWS) for violating the Endangered Species Act (ESA), 16 U.S.C. § 1531 *et seq.*, by failing to adopt and implement plans to protect various endangered species that live in the San Marcos and Comal Springs of Central Texas. The district court admitted several governmental entities as plaintiff-intervenors, and opposing governmental entities and private water users as defendant-intervenors. After trial, the district court enjoined FWS to generate and disseminate information about the springflows necessary to protect endangered species at San Marcos and Comal Springs. FWS appealed, but later agreed to dismiss its appeal if the plaintiffs joined a "Motion to Clarify the Judgment and Findings," which did not affect the relief ordered against FWS. The plaintiffs joined the motion, the district court amended its findings and judgment in accord with the motion, and FWS dismissed its appeal. Several defendant-intervenors wish to continue an appeal in the absence of FWS. We dismiss for want of jurisdiction.

## I. BACKGROUND

The Edwards Aquifer (Edwards) stores water in a natural underground reservoir that stretches through six counties in Central Texas. Rainfall seeps through porous earth to "recharge"

2

Edwards all along its path, and the water in the aquifer flows eastward. Many governments, corporations, and individuals, including appellants, pump water from Edwards. Depending on the amount that recharge exceeds pumping, water leaves Edwards naturally at two large springs, San Marcos Springs and Comal Springs, situated approximately fifteen miles apart at the aquifer's eastern edge.

San Marcos Springs and dependent streams are home to four species listed by the federal government as "endangered" (the Fountain Darter, the Texas Blind Salamander, the San Marcos Gambusia (which may now be extinct), and Texas Wild Rice) and one listed as "threatened" (the San Marcos Salamander). *See* 50 C.F.R. §§ 17.11-12 (1992). Comal Springs and dependent streams are the only other home worldwide to the Fountain Darter and the San Marcos Salamander. Until June 1993, Texas placed no restrictions on pumping from Edwards, so no guarantee existed that water for these species would come from San Marcos or Comal Springs although all of the species depend on water for their survival.

In May 1991, Sierra Club sued FWS, alleging that endangered species died when flow from the San Marcos and Comal Springs dropped below a certain number of cubic feet per second. Sierra Club asserted that FWS was responsible for the loss of these creatures under the ESA because FWS failed to develop and disseminate information about the minimum springflows necessary to protect the endangered species, and because FWS failed to

3

exercise its authority under the ESA to impose pumping restrictions to maintain the necessary springflows.  Several governmental entities who are interested in maximizing springflow from San Marcos and Comal Springs intervened as plaintiffs,[2] and an opposing set of governmental entities and private water users interested in preserving the right to pump Edwards water without limitation intervened as defendants.[3]  Subsequently, Sierra Club and all plaintiff-intervenors amended their complaints to strike their claim that the ESA required FWS to regulate pumping from Edwards; but they continued to press their claim that the ESA requires FWS to determine the minimum springflows necessary to preserve the endangered species at San Marcos and Comal Springs.

Judge Bunton conducted a bench trial and issued comprehensive findings and conclusions in February 1993.  He concluded that FWS has a nondiscretionary duty under ESA § 4(f), 16 U.S.C. § 1533(f), to "develop and implement ... recovery plans" for endangered species, and that FWS neglected its section 4(f) duty with respect to the four endangered species at San

---

[2] Plaintiff-intervenors include the Guadalupe-Blanco River Authority, the City of San Marcos, the City of New Braunfels, New Braunfels Utilities, Green Valley Special Utility District, Atascosa Rural Water Supply Corporation, and Bexar Metropolitan Water District.

[3] Defendant-intervenors include the Texas Department of Agriculture, the Texas Water Commission (TWC), the Texas Parks and Wildlife Division, the City of San Antonio, the Greater San Antonio Builders Association, United Services Automobile Association, Redland Stone Products Company, Southwest Research Institute, USAA Real Estate Company, Southwest Foundation for Biomedical Research, Living Waters Artesian Springs, Ltd., Danny McFadin, Tommy Walker, and Carl Muecke.

Marcos and Comal Springs.  He also held that FWS "took" Fountain Darters in violation of ESA § 9, 16 U.S.C. § 1538, by failing to promulgate springflow limits before droughts in 1989 and 1990. Based on these conclusions, the district court enjoined FWS to develop and disseminate information about the springflows necessary to sustain the endangered species at San Marcos and Comal Springs.  The court did not order further relief against FWS, nor did it order relief against anyone other than FWS.[4] This judgment satisfied the plaintiffs, but FWS and several defendant-intervenors appealed.

When Interior Secretary Babbitt replaced Interior Secretary Lujan, FWS changed its position in this case.  FWS agreed to dismiss its appeal if the plaintiffs agreed to certain semantic changes in the district court's findings and judgment;[5] none of the changes affect the relief ordered against FWS.  The plaintiffs joined FWS's Motion to Clarify the Judgment and Findings, the district court amended its findings and judgment to conform with the parties' motion, and FWS dismissed its appeal. However, several defendant-intervenors wish to continue their appeals.[6]  The appellees argue that the appellants have no

---

[4] The court did enjoin TWC to prepare a comprehensive Edwards management plan, but TWC asked to be assigned this task, has already performed it, and no one complains about this part of the district court's judgment on appeal.

[5] Most significantly, the amended findings recite "that the absence of knowledge," rather than FWS's recalcitrance, caused takings of and jeopardy to Fountain Darters in 1989 and 1990.

[6] Appellants include all parties listed in note 3, *supra*, except: the Texas Parks and Wildlife Division and Living Waters

standing absent FWS, and that we have no jurisdiction to decide these appeals.

## II. ANALYSIS

The Constitution's Article III limits the federal judiciary's decisional authority to "cases" and "controversies." A case or controversy does not exist unless the person who asks the court for a decision has "standing" to do so, the elements of which are injury, causation, and redressability. *See Lujan v. Defenders of Wildlife*, ))) U.S. ))), 112 S. Ct. 2130, 2136 (1992). A party's "status as an intervenor ... does not confer standing sufficient to keep the case alive in the absence of [the party on whose side the intervenor intervened]." *Diamond v. Charles*, 476 U.S. 54, 68, 106 S. Ct. 1697, 1706 (1986). Rather, intervenors who wish to prosecute an appeal on their own must separately fulfill the injury, causation, and redressability requirements of Article III. *Id.*

Where standing to appeal is at issue, appellants must demonstrate some injury *from the judgment below*. *See* 15A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3902, at 63 (1992). The judgment here simply requires FWS to develop and disseminate springflow information based on the court's finding that ESA § 4(f) places a nondiscretionary duty on FWS to generate this information. In its judgment, the district court also makes "interim springflow findings for all purposes under the ESA" at which various endangered species are

Artesian Springs, Ltd.

6

"taken" or "jeopardized" within the meaning of the ESA.  Because these findings are irrelevant to whether FWS has a duty to develop and disseminate springflow information, they have no preclusive effect in future litigation.  *See Hicks v. Quaker Oats Co.*, 662 F.2d 1158, 1166 (5th Cir. 1981) (No issue can be precluded unless "the determination of the issue in the prior litigation [was] a critical and necessary part of the judgment.").  Counsel for plaintiffs agreed at oral argument that the springflow numbers adopted by FWS are subject to challenge in any subsequent enforcement suit under the ESA.

Moreover, because FWS has agreed to the amended judgment and it grants relief only against FWS and merely requires it to develop and disseminate factual information having no legal consequence and which FWS would be free to develop and disseminate absent the judgment, and because intervenor-defendants, including the TWC, are not bound by such information or its dissemination (and are as free to subsequently contest it as if it were not made pursuant to the judgment), none of the findings or declarations in the amended judgment (or in the amended findings of fact and conclusions of law) are necessary to the relief ordered against FWS.  Thus none of such findings or declarations have preclusive effect on appellants in future litigation, and appellants otherwise lack standing to challenge any of them here.

Our decision concerning preclusive effect controls subsequent cases.  In *New York Telephone Co. v. Maltbie*, 291 U.S.

7

645, 54 S. Ct. 443 (1934), a district court enjoined the enforcement of rate orders at the telephone company's behest, and also fixed the value of the telephone company's property and the allowed rate of return on that property. The telephone company appealed because it disagreed with the determinations of property value and rate of return. The Supreme Court simply stated that the court's findings concerning property value and rate of return "are not to be regarded as res judicata ... in any judicial proceeding," and dismissed the appeal. *Id.* at 646, 54 S. Ct. at 443. We follow the same course here to assure the appellants that they will suffer no adverse consequences in future litigation from the judgment and findings in this case. *See also* 15A WRIGHT, MILLER, & COOPER, § 3902, at 83 ("[I]t is better to deny appeal and forbid preclusion than to permit appeal in order to support preclusion.").

The appellants allege numerous injuries from the district court's judgment, but we decide that the judgment and findings are of no consequence to them. On its face, the judgment orders nothing of the appellants. Nor will the judgment affect the appellants in any future litigation, because the only issue necessarily decided by the district court is that *FWS* has a nondiscretionary duty to promulgate springflow information. The appellants cannot legitimately blame the judgment for causing any future litigation; the information ordered by the district court is in no wise a prerequisite to ESA-enforcement litigation. Finally, the judgment inflicts no procedural injury on the

8

appellants )) no law accords the appellants a right to participate in FWS's decisionmaking process because the springflow information mandated by the judgment does not, of itself, bind the appellants, and because the judgment recognizes that FWS may change its springflow determinations at any time in the exercise of its best professional judgment.

DISMISSED.