United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 20, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 04-10860

_____


KITTY HAWK AIRCARGO, INC.,

Plaintiff-Appellee

versus

ELAINE CHAO, Etc.

Defendant

AIR LINE PILOTS ASSOCIATION; HAL WINTERS

Intervenor Defendants-Appellants


--------------------
Appeals from the United States District Court
for the Northern District of Texas
--------------------

Before, DAVIS, STEWART and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

Intervenors Airline Pilots Association (ALPA) and Hal Winters appeal the district court's granting of summary judgment to the plaintiff, Kitty Hawk Aircargo, Inc. The district court enjoined the defendant, the Secretary of the United States Department of Labor (the Secretary), from implementing, against Kitty Hawk, a ruling of the Department of Labor's Administrative Review Board (ARB) concluding that pilots are "service employees" subject to the prevailing wage requirements of the McNamara-O'Hara Service Contract

Act (SCA).  We conclude that Kitty Hawk lacked standing to challenge the ARB's ruling in the district court.  We therefore reverse the judgment of the district court and remand with instruction to dismiss the complaint.

I

The United States Postal Service contracts with air cargo carriers for the transportation of the nation's mail.  There are three major types of Postal Service air cargo contracts: ANET, WNET and CNET contracts.  ANET and WNET contracts are year-round contracts; CNET contracts are short-term peak Christmas season contracts.  In addition to the three major types of contracts, the Postal Service enters into some air transport contracts between certain pairs of cities during peak periods (point-to-point contracts) and for mail delivery on direct and indirect flights on the carrier's transportation system between certain dates (ASYS contracts).  The SCA applies to WNET, ANET, and CNET contracts and, apparently, to point-to-point contracts. There are exemptions, however, for certain ASYS contracts based upon the proportion of the carrier's revenue attributable to Postal Service business.  The plaintiff, Kitty Hawk Air Cargo Inc., formerly held certain contracts subject to the SCA.

Every contract subject to the SCA must include, among other things, a "provision specifying the minimum monetary wages to be paid the various classes of service employees in the performance of the contract or any subcontract thereunder, as determined by the

Secretary, or his authorized representative, in accordance with prevailing rates for such employees in the locality . . . ."[1] The Secretary has delegated the task of making prevailing wage determinations to the Wage and Hour division (WHD).[2] In 1996, the WHD issued wage determination No. 95-0229 (Rev. 1) which significantly increased the prevailing wage determination for captains and first officers (pilots) transporting mail.

The Postal Service, which is required by regulation to increase contract prices to defray the additional costs of a changed wage determination,[3] challenged the wage determination. Numerous other interested parties also challenged the new wage rate. The parties argued that the WHD used an improper methodology to calculate the new wage rate and also argued that pilots are exempt from the prevailing wage provisions of the SCA because they are "professionals" rather than "service employees" under the SCA. On December 13, 1996, the WHD issued a letter ruling reducing the pilot wage rate for ANET and WNET pilots. The letter ruling also explicitly exempted pilots on CNET and other short-term contracts from that wage rate and instead issued a separate, significantly lower, rate for those pilots. The WHD, however, failed to address whether pilots are professionals and therefore not subject to the prevailing wage provisions of the SCA.

---

[1] 41 U.S.C. § 351(a)(1).

[2] 29 C.F.R. § 4.1a(c).

[3] 22 C.F.R. § 22.1006.

Kitty Hawk and the Postal Service, among others, appealed the WHD's decision to the ARB. The ARB remanded the matter to the WHD to make an initial determination regarding the applicability of the SCA's prevailing wage requirements to pilots. On remand, the WHD determined that pilots are not professionals exempt from the wage provisions of the SCA. Kitty Hawk, the Postal Service and others again appealed to the ARB. The ARB affirmed the WHD's determination that pilots are not exempt from the prevailing wage provisions of the SCA but found that the WHD's method of calculating the wage rates for ANET and WNET pilots was contrary to the statute. Thus, the ARB remanded the matter to the WHD for a recalculation of the prevailing wage for air cargo pilots working on ANET and WNET Postal Service contracts.

Kitty Hawk filed a complaint in the district court on July 16, 2001 seeking judicial review of the ARB's decision. On January 10, 2001, however, the Postal Service had entered into a seven-year renewable contract with FedEx for the year-round, nationwide transportation of mail.[4] Accordingly, by August 21, 2001, the Postal Service had terminated, for its own convenience, all of Kitty Hawk's major year-round contracts. On January 29, 2002, Kitty Hawk entered into a settlement agreement with the Postal Service concerning the termination of Kitty Hawk's largest contract, WNET 99-01. As part of the settlement, Kitty Hawk agreed

---

[4] *See Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1074 (Fed. Cir. 2001)(discussing the FedEx contract).

to indemnify the Postal Service for any liability to the pilots who had worked on that and other contracts "for [SCA] issues related to the disputed pilot wage determinations." Kitty Hawk received more than $30 million in the settlement.

ALPA and Captain Hal Winters, a pilot employed by another air cargo company, intervened in the district court, with Kitty Hawk's consent, on the side of the Secretary. On May 30, 2002, ALPA and Winters filed a motion for summary judgment arguing, among other things, that Kitty Hawk lacked standing to challenge the ARB's decision. The district court denied the motion without opinion. The Secretary and Kitty Hawk subsequently filed cross-motions for summary judgment. The district court granted Kitty Hawk's motion for summary judgment and denied that of the Secretary.

The district court's initial judgment set aside the ARB's ruling and enjoined the Secretary from implementing the decision. The Secretary filed a motion to amend the judgment arguing that, because Kitty Hawk was the only party to the ARB's action that sought judicial review, the judgment should be limited to Kitty Hawk. The district court agreed and issued an amended judgment which did not set aside the ARB ruling but merely enjoined the Secretary from taking action against Kitty Hawk in accordance with the ruling or from taking any action against Kitty Hawk that would be inconsistent with the district court's finding that Kitty Hawk pilots are not service employees subject to the prevailing wage

requirements of the SCA.  Intervenors ALPA and Winters appeal from the amended judgment; the Secretary did not appeal.

II

As an initial matter we address Kitty Hawk's motion to dismiss the appeal for lack of jurisdiction.  According to Kitty Hawk, the appellants lack standing to appeal because neither was a party at the district court and neither can individually satisfy the Article III requirement of injury resulting from the judgment.  We conclude that ALPA satisfies Article III and, therefore, this court has jurisdiction over the appeal, regardless of Winters' ability to independently satisfy Article III.

ALPA and Winters intervened in the district court on the side of the Secretary with the consent of Kitty Hawk.  Generally, a party's status as an intervenor below does not confer standing to appeal if the party on whose side intervention was permitted chooses not to appeal.[5]  "Rather, intervenors who wish to prosecute an appeal on their own must separately fulfill the injury, causation, and redressability requirements of Article III."[6]

"Where standing to appeal is at issue, appellants must demonstrate some injury from the judgment below."[7] The judgment below applies only to the Secretary and Kitty Hawk.  Thus, Kitty Hawk argues that because there is nothing in the record to

---

[5] *See Diamond v. Charles*, 476 U.S. 54, 68 (1986).

[6] *Sierra Club v. Babbitt*, 995 F.2d 571, 574 (5th Cir. 1993).

[7] *Id.*, 575.

demonstrate that ALPA has any relationship to the Kitty Hawk pilots, neither ALPA nor the pilots it represents are injured by the judgment. Furthermore, Kitty Hawk argues that Winters, a pilot who does not work for Kitty Hawk, is not injured by the district court's decision.

ALPA is the certified collective bargaining representative of the Kitty Hawk pilots. Kitty Hawk does not dispute that ALPA represents the pilots nor does it seriously dispute that, as the collective bargaining representative of the pilots whose wages are at issue, ALPA has standing to appeal the district court's judgment. Rather, Kitty Hawk contends that ALPA cannot point to any proof in the record of its representation of the Kitty Hawk pilots and, therefore, this court lacks jurisdiction over the appeal.

Kitty Hawk is correct that there is no evidence in the record proving that ALPA is the collective bargaining representative of the Kitty Hawk pilots. At the time that ALPA intervened in the district court action, it did not represent the Kitty Hawk pilots. Therefore, it did not allege that it represented those pilots and did not submit evidence to that effect. In 2003, however, ALPA merged with the Kitty Hawk pilots' prior certified collective bargaining representative, the Kitty Hawk Pilots Association (KPA). On January 5, 2004, the National Mediation Board (NMB) approved the transfer of KPA's certification to ALPA. This approval is published in the official administrative agency reporter, is

available on the agency's website and on Lexis and Westlaw.[8]  Thus,
ALPA's representation of the Kitty Hawk pilots is capable of
accurate and ready determination by resort to a source whose
accuracy on the matter cannot reasonably be questioned.   We
therefore take judicial notice of ALPA's status as the collective
bargaining representative of the Kitty Hawk pilots.[9]  Additionally,
we conclude that as the collective bargaining representative of the
Kitty Hawk pilots, ALPA has standing to bring this appeal.[10]
Furthermore, because jurisdiction over this appeal has vested,
Winters' presence in the appeal does not destroy jurisdiction even

---

[8] *See* 31 NMB 103; 31 NMB No. 25; 2004 NMB Ltr. LEXIS 1.

[9] *See, e.g.*, *United States v. Herrera-Ochoa*, 245 F.3d 495,
501 (5th Cir. 2001)(quoting Fed. R. Evid. § 201(b))(Internal
quotation marks omitted)("Judicial notice may be taken of any
fact not subject to reasonable dispute in that it is either (1)
generally known within the territorial jurisdiction of the trial
court or (2) capable of accurate and ready determination by
resort to sources whose accuracy cannot reasonably be
questioned.")

[10] *See, e.g.*, *Supreme Beef Processors, Inc. v. USDA*, 275
F.3d 432, 437 n.14 (5th Cir. 2001) (quoting *Central and South
West Services, Inc. v. EPA*, 220 F.3d 683, 698 (5th Cir.
2000))("An association has standing to bring a suit on behalf of
its members when: (1) its members would otherwise have standing
to sue in their own right; (2) the interests it seeks to protect
are germane to the organization's purpose; and (3) neither the
claim asserted nor the relief requested requires the
participation of individual members.")

if he cannot individually satisfy the requirements of Article III.[11] Accordingly, we deny Kitty Hawk's motion to dismiss the appeal.

## III

We now turn to the appellants' argument that Kitty Hawk lacked standing to challenge the ARB's ruling in the district court. As previously noted, standing, one of the doctrines arising under the case and controversy requirement of Article III, requires that plaintiffs establish that: "they have suffered an 'injury in fact'; the injury is 'fairly traceable' to the defendant's actions; and the injury will 'likely . . . be redressed by a favorable decision."[12] "An injury in fact [is] an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."[13] Where, as here, a plaintiff is seeking injunctive or declaratory relief, the plaintiff must demonstrate that there is a substantial likelihood that it will suffer injury in the future.[14] Finally, "standing is . . . determined as of the commencement of the suit."[15]

---

[11] *Ruiz v. Estelle,* 161 F.3d 814, 832 (5th Cir. 1998)(holding that where a valid Article III case or controversy exists, the court's jurisdiction vests and the presence of additional parties who could not, individually, satisfy Article III does not destroy jurisdiction).

[12] *Public Citizen, Inc. v. Bomer*, 274 F.3d 212, 217 (5th Cir. 2001)(quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

[13] *Lujan*, 504 U.S. at 560.

[14] *Bauer v. Texas*, 341 F.3d 352, 357-58 (5th Cir. 2003).

[15] *Id.*, 571-72 n.5.

On July 16, 2001, the date of the commencement of this suit, Kitty Hawk still held at least one contract subject to the SCA and to the disputed prevailing wage determination.[16] Those contracts all contained a clause, as mandated by regulation,[17] stating that the Postal Service would adjust the contract price if any applicable prevailing wage rate was increased. Thus, Kitty Hawk was not likely to suffer any direct financial harm as a result of any increase in the prevailing wage for pilots applicable to contracts it held when it filed its complaint. Moreover, Kitty Hawk has admitted that, when calculating labor costs for proposals on Postal Service contracts subject to the SCA, it considers the applicable prevailing wage determinations. Essentially, the cost of any increased wage rate for pilots will be passed on to the Postal Service. Therefore, Kitty Hawk is not likely to suffer any lost profits in the future as a result of an increase in the disputed prevailing wage rate.

Recognizing this fact, Kitty Hawk instead argues that it is likely to suffer various indirect harms. As to future contracts, Kitty Hawk claims that, if the prevailing wage determination is increased, it would have to either pay all pilots an allegedly noncompetitive wage, or implement a two-tier wage system which, according to Kitty Hawk, would interfere with the existing

---

[16] The record indicates that Kitty Hawk's largest contract, WNET-99-01, was terminated on August 21, 2001 and that its other contracts were either completed or terminated by that date.

[17] *See* 22 C.F.R. § 22.1006.

seniority system and prevent Kitty Hawk from assigning pilots to routes according to established operational procedures and business considerations. Kitty Hawk, however, does not allege and has not proven that it is likely to bid on or to receive future ANET or WNET contracts. Rather, Kitty Hawk's opportunities for Postal Service contracts are now apparently limited to CNET, ASYS and point-to-point contracts. The disputed wage determination, however, does not apply to CNET contracts and may not apply to point-to-point and ASYS contracts.[18] The wage determination that applies to CNET (and possibly other short-term contracts) mandates a far lower wage than the disputed wage determination and there is no indication in the record that the reduced wage rate applicable to those contracts is likely to increase to an objectionable level in the near future. In addition, the SCA itself only applies to ASYS contracts under certain circumstances. Thus, Kitty Hawk's claims of injury resulting from future contracts relies on a string of hypotheticals and conjectures: if it receives future contracts, if those contracts are subject to the SCA, if the disputed

---

[18] In its 1996 letter ruling, the WHD concluded that the methodology used to calculate the prevailing wage rate for WNET and ANET contracts, which included the consideration of the wages paid to pilots by major airlines, was inappropriate for "smaller short term contracts." Thus, the WHD issued a separate – much lower – prevailing wage for "other small limited service contracts, including the Postal Service's CNET . . . contracts." Point-to-point and ASYS contracts are smaller limited service contracts and, therefore, are likely subject to the lower prevailing wage determination. The disputed wage determination itself, as opposed to the letter ruling, however, excludes only CNET contracts. Thus, it is unclear from the record which prevailing wage determination is applicable to point-to-point and ASYS contracts.

prevailing wage applies to those contracts or if the prevailing wage rate applicable to those contracts significantly increases, etc.

Moreover, even if all of these conjectures become reality, the primary injury Kitty Hawk claims it will suffer, namely, having to implement a two-tiered wage system, is likely no injury at all. Kitty Hawk admittedly already has a seniority system whereby more senior pilots receive preference for more lucrative routes. It is not apparent, and Kitty Hawk has never proven, that having Postal Service contracts that generate pilot income greater than that generated by commercial contracts will interfere with that system. Furthermore, Kitty Hawk cites nothing in the record, beyond a conclusory statement in the affidavit of its Chief Executive Officer, in support of its assertion that an increased prevailing wage determination will interfere with its ability to assign pilots according to standard operating procedures and business considerations. At the summary judgment stage, "the plaintiff can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts" validating his right to standing.[19]

Kitty Hawk also claims that it has standing by virtue of its assumption of the Postal Service's liability for back pay per the contract termination settlement agreement. Of course, the contract had not yet been terminated when Kitty Hawk filed this suit and

---

[19] *Lujan*, 504 U.S. at 561 (emphasis added).

Kitty Hawk had not assumed liability for any back pay. Furthermore, there is no indication in the record that the specific terms of the settlement agreement were anticipated by Kitty Hawk at the time it filed the complaint. "As with all questions of subject matter jurisdiction except mootness, standing is determined as of the date of the filing of the complaint . . . ."[20] The party invoking the jurisdiction of the court cannot rely on events that unfolded after the filing of the complaint to establish its standing.[21] Thus, Kitty Hawk's assumption of the Postal Service's liability for back pay is not relevant to the standing analysis.

Finally, Kitty Hawk submitted a letter following oral argument, purportedly pursuant to Rule 28(j) of the Federal Rules

---

[20] *Carr v. Alta Verde Indus*., Inc., 931 F.2d 1055, 1061 (5th Cir. 1991); *See also Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989)("The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed"); *White v. Lee*, 227 F.3d 1214, 1243 (9th Cir. 2000) ("Standing is examined at 'the commencement of the litigation'"); *Park v. Forest Serv. of the United States*, 205 F.3d 1034, 1037 (8th Cir. 2000) ("We do not think, however, that the actual use of checkpoints in 1997, 1998, and 1999 is relevant on the issue of standing because all of these events occurred after [the plaintiff] filed her original complaint"); *Perry v. Arlington Heights*, 186 F.3d 826, 830 (7th Cir. 1999)("Because standing goes to the jurisdiction of a federal court to hear a particular case, it must exist at the commencement of the suit.")

[21] *See Lujan*, 504 U.S. at 570 n.4 (explaining that acts occurring after commencement of the suit cannot retroactively create jurisdiction); *Park,* 205 F.3d at 1037 (8th Cir. 2000) (holding that a plaintiff cannot rely on events occurring after commencement of the suit to establish injury-in-fact) *Perry*, 186 F.3d at 830 (concluding that plaintiff, who established residency in municipality after initiating suit, did not have standing to challenge the constitutionality of articles of the municipal code because he was not a resident when he filed his complaint.)

of Appellate Procedure, raising new arguments concerning its standing. Specifically, Kitty Hawk claims, that "the Secretary's position is that an employee covered by a monthly wage determination under the . . . [SCA] who works even one day under a covered contract must be paid at the SCA level for the entire month."[22] Kitty Hawk cites no authority for this statement. Therefore, this assertion certainly does not fall within the ambit of Rule 28(j), which permits parties to bring pertinent legal authority to the court's attention following briefing. Furthermore, without a citation either to the record or to legal authority we cannot gauge the veracity of the assertion. The applicable regulations do not contain such a requirement and none was apparently alleged in the district court. Accordingly, we do not consider Kitty Hawk's allegation probative of its standing.

In sum, Kitty Hawk has not established that, at the time it filed its complaint, it had suffered any injury-in-fact, or that there was a substantial likelihood that it would suffer an injury-in-fact in the future, and the district court lacked jurisdiction over Kitty Hawk's complaint. Accordingly, we REVERSE the judgment of the district court and REMAND with instructions to dismiss the complaint.

---

[22] Kitty Hawk also contends that its agreement to indemnify the Postal Service for back pay was not voluntary. This contention is irrelevant for the reasons previously stated.