IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

————

No. 17-20246

————

United States Court of Appeals
Fifth Circuit

**FILED**
January 14, 2019

Lyle W. Cayce
Clerk

NUSTAR ENERGY SERVICES, INCORPORATED,

     Plaintiff - Appellant

v.

M/V COSCO AUCKLAND, IMO NO. 9484261, et al.

     Defendants - Third Party Plaintiffs

COSCO Haifa Maritime Ltd., COSCO Auckland Maritime Ltd., COSCON,
COSCO Venice Maritime Ltd.,

     Third Party Plaintiffs - Appellees

v.

ING BANK N.V.,

     Third Party Defendant - Appellee

————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:14-CV-3648

————

No. 17-20246

Before WIENER, SOUTHWICK, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:*

This lawsuit is the latest round in the maritime litigation spawned by the collapse of OW Bunker, formerly the world's largest supplier of fuel for ships. In federal courts across the country, OW's subcontractors have asserted maritime liens on the ships to which they physically delivered fuel. If successful, these claims would allow them a full recovery rather than the pennies on the dollar they would likely receive in bankruptcy court. But the subcontractors are not alone in their pursuit of maritime liens—OW's largest secured creditor has also staked a claim. Our ruling in an earlier OW Bunker case means that the subcontractor here does not possess liens on the vessels it supplied because it was not acting on the orders of the vessels or their agents. And because it does not have liens, we conclude that it is not able to appeal a ruling that the secured creditor does hold liens.

I.

The secured creditor, ING Bank, asserts maritime liens based on a $700 million revolving credit facility that a group of lenders provided OW Bunker and its affiliates almost a year before they went under. ING served as the syndicate's security agent. To secure the credit facility, each OW entity assigned ING "all of its rights, title and interest in respect of the Supply Receivables." "Supply Receivables" are amounts owed for the sale of oil products.

Four such sales gave rise to this case. Each sale involved the same series of transactions. COSCO ships ordered fuel bunkers from COSCO Petroleum,

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

which then contracted through Chimbusco Americas, a COSCO agent with authority to bind the vessels. Chimbusco contracted with OW Far East to supply the bunkers. OW Far East subcontracted to its United States affiliate, OW USA. And OW USA subcontracted to NuStar, which physically supplied the fuel bunkers to the ships. NuStar is the other party that asserts maritime liens on the COSCO vessels that received the bunkers.

This chart showing the layers of intermediaries helps:



NuStar's invoices to OW USA went unpaid as the OW Bunker network collapsed. Two weeks after the last delivery, OW USA filed for Chapter 11 bankruptcy in Connecticut. Back in Houston, NuStar quickly sued the COSCO vessels in rem, asserting maritime liens. To avoid arrest of the vessels, COSCO agreed to deposit the $2.69 million owed to NuStar into an escrow account to serve as a substitute res.

COSCO then filed a third-party claim interpleading NuStar, OW Far East, OW USA, and ING. OW Far East never appeared in the litigation. OW

No. 17-20246

USA disclaimed its interest in "any claims arising from the bunker supply transaction" at issue, as required by its liquidation plan approved by the bankruptcy court. ING, though, claimed an interest and brought maritime lien and contract counterclaims of its own, asserting the rights assigned it in the security agreement.[1]

On competing motions for summary judgment, the district court first ruled that NuStar did not hold liens under the Commercial Instruments and Maritime Liens Act because it had delivered the bunkers on the order of OW USA, not "on the order of the [vessel] owner or a person authorized by the owner." *See* 46 U.S.C. § 31342(a). On the other hand, OW Far East was entitled to maritime liens because it was obligated—by a contract with one authorized to bind the vessels (Chimbusco)—to deliver the bunkers. And OW Far East had, the district court concluded, validly assigned those maritime liens to ING. As a result, the district court awarded ING a judgment against the COSCO vessels for the $2.99 million owed OW Far East for the fuel. NuStar appeals both the ruling that it does not hold maritime liens and the ruling that OW Far East validly assigned its maritime liens to ING.

II.

As NuStar's counsel acknowledged at oral argument, our recent decision in another OW Bunker case controls the first half of this one. Under the Commercial Instruments and Maritime Liens Act, "a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner . . . has a maritime lien on the vessel." 46 U.S.C. § 31342(a)(1). Trying to meet that requirement, NuStar relied largely on Chimbusco's being aware

---

[1] The district court later clarified that ING could not claim against the escrowed funds because of the terms of NuStar's escrow agreement. It nevertheless determined that NuStar's claim against the fund and ING's maritime lien claims against the vessels were sufficiently adverse, and COSCO's threat of double liability sufficiently high, to justify COSCO's use of the interpleader procedure. *See* FED. R. CIV. P. 22.

that NuStar would physically supply the fuel bunkers, and the vessels' employees' overseeing and accepting the deliveries. The district court held that those facts did not rise to the level of "authorization" by the vessel owner (COSCO) or one authorized by the owner (Chimbusco).

Since then, this court has agreed that "[m]ere awareness does not constitute authorization under CIMLA." *Valero Mktg. & Supply Co. v. M/V Almi Sun,* 893 F.3d 290, 295 (5th Cir. 2018). In *Valero*, as here, the vessel's agent knew that the OW intermediary had selected Valero as the physical supplier and did not object. *Id.* at 294. The vessel's employees "monitored and tested Valero's performance." *Id.* But those facts showed no more than that the vessel's agents were aware of the physical supplier's identity—not that the physical supplier acted "on the order of" the vessel's agents. *Id.*; *see also Lake Charles Stevedores, Inc. v. Professor Vladimir Popov MV*, 199 F.3d 220, 229 (5th Cir. 1999) ("[S]ubcontractors . . . are generally not entitled to assert a [maritime] lien on their own behalf, unless it can be shown that an entity authorized to bind the ship controlled the selection of the subcontractor and/or its performance.").

As we see no daylight between *Valero* and this case,[2] we agree with the district court that NuStar does not hold maritime liens.

---

[2] *Valero* joined two other circuits that had ruled the same way in OW Bunker cases. *ING Bank N.V. v. M/V TEMARA*, 892 F.3d 511, 521–22 (2d Cir. 2018); *Barcliff, LLC v. M/V Deep Blue*, 876 F.3d 1063, 1071 (11th Cir. 2017). It now has even more support as the Ninth Circuit has since agreed with *Valero*. *See Bunker Holdings Ltd. v. Yang Ming Liberia Corp.*, 906 F.3d 843, 847 (9th Cir. 2018). The Ninth Circuit's ruling on this question in an OW Bunker case is especially noteworthy because it distinguished an earlier Ninth Circuit decision that is one of the main cases that NuStar relies on. *See id.* at 846 (concluding that the case was not controlled by *Marine Fuel Supply & Towing, Inc. v. M/V Ken Lucky*, 869 F.2d 473 (9th Cir. 1988)).

No. 17-20246

III.

Now to the question not at issue in *Valero*. NuStar does not challenge the district court's ruling that OW Far East satisfied the statutory requirement for maritime liens. Unlike NuStar, OW Far East did receive the vessel owner's authorization to provide the fuel.

But NuStar does challenge the ruling that OW Far East validly assigned its maritime liens to ING as part of the security agreement for the $700 million credit facility. It contends that OW Far East's assignment of "all of its rights, title and interest in respect of the Supply Receivables" does not include the maritime liens securing the fuel contracts. And even if it does, NuStar argues that such an assignment would be unenforceable. Complicating the latter issue is the English choice-of-law clause that governs the security agreement, and thus the assignment. NuStar points to authority stating that under English law "it appears that the maritime lien is not transferable," NIGEL MEESON & JOHN A. KIMBELL, ADMIRALTY JURISDICTION AND PRACTICE ¶ 1.53, at 21 (4th ed. 2011), and both sides submitted expert reports on this question.

But before we address the scope of the assignment, or the assignability of maritime liens, we must assure ourselves that NuStar still has a cognizable interest in the answer to these questions about ING's liens in light of our holding that NuStar does not have liens on the vessels. The concern is that the district court's ruling that OW Far East assigned its liens to ING no longer affects NuStar in a concrete way. This requirement of a live controversy, which stems from Article III limitations on our jurisdiction, is better known as part of the standing inquiry conducted at the beginning of a lawsuit. But a party's need to show that connection to a dispute is no less true for parties invoking the power of an appellate court than for parties filing suits in district courts. *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013); *see also Rohm & Hass Tex., Inc. v. Ortiz Bros. Insulation, Inc.*, 32 F.3d 205, 208 (5th Cir. 1994) ("Merely

6

because a party appears in the district court proceedings does not mean that the party automatically has standing to appeal the judgment rendered by that court."). When "standing to appeal is at issue, appellants must demonstrate some injury *from the judgment below.*" *Sierra Club v. Babbitt*, 995 F.2d 571, 575 (5th Cir. 1993) (emphasis in original).

To appeal the assignment ruling, NuStar thus must show that it would be better off if the district court had not ruled that the assignment was valid. The standing label for this need to show that a "favorable ruling" will benefit a party is redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The most direct route to that is not available: NuStar would not receive an immediate benefit from a reversal on the ING issue. That is, an appellate ruling that ING was not assigned the liens would not result in judgment being entered in NuStar's favor for the $2.99 million or any other sum.[3] Of course, if we had reversed and ruled that NuStar held maritime liens on the vessels, then it would have standing to challenge the ruling that ING holds a lien. But we have just held that NuStar does not hold liens. So our ruling against NuStar's maritime lien claims moots NuStar's interest in challenging the assignment as a competing lienholder. *See Texas Oil & Gas Ass'n v. EPA*, 161 F.3d 923, 940 (5th Cir. 1998) (holding that second issue the appellant raised was moot because resolution of the first issue meant that a win on the second would not benefit the appellant).

NuStar proposes an alternative theory of standing not dependent on its being a lienholder. NuStar is a creditor in OW USA's bankruptcy, and it argues that the ruling in favor of ING deprived OW USA's bankruptcy estate of $2.99 million. The idea is that if no claimant holds a lien on the vessels,

---

[3] OW Far East could have appealed the ruling that it assigned its rights, but it has never appeared in this case.

then COSCO's payment for the fuel would end up in the bankruptcy. Even assuming that NuStar would have standing to fight this battle that affects all creditors,[4] and for which as an unsecured creditor it likely would receive a tiny fraction of COSCO's fuel payment, the idea that any of this money would end up in NuStar's pockets rests on too "speculative [a] chain of possibilities." *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 414 (2013).

The first bit of uncertainty is whether an appellate ruling rejecting ING's maritime liens would change the outcome of this case. On remand, ING would still pursue its as-yet-undecided contract claims asserting a security interest in OW Far East's supply receivables—which payment COSCO admits it owes. With neither COSCO nor OW Far East contesting this contract claim, there is a good chance ING would recover the $2.99 million in contract. And if ING can claim the money in contract, reversing on ING's maritime lien claims would leave the OW USA bankruptcy estate and its creditors in the same position they are in now.

More importantly, even if ING lost not only on its maritime lien claims but also on its contract claims, NuStar has not demonstrated a meaningful probability that the $2.99 million would find its way to the OW USA bankruptcy estate. In a world in which COSCO did not have to pay OW Far East's assignee (ING), it would still have to pay OW Far East. So NuStar's theory depends on inferring that some or all of the $2.99 million, if paid to OW Far East, would reach the OW USA bankruptcy estate.

Given the intricacies of international bankruptcy law, we cannot speak with certainty about whether NuStar's theory could work. But NuStar has not

---

[4] There may be third party standing problems that limit NuStar's ability to litigate on behalf of the estate. For example, although a question of standing under the bankruptcy statutes as opposed to constitutional standing, a trustee has exclusive standing to recover property that belongs to the estate. *See In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 584 (5th Cir. 2008).

shown a substantial likelihood that the money would end up in Connecticut bankruptcy court. *Lujan*, 504 U.S. at at 561 (explaining that a party must show that a favorable ruling will "likely" benefit it); *Rohm & Hass*, 32 F.3d at 208 (noting appellant has burden to show standing to appeal). It relies on ING's agreement in OW USA's now-effective liquidation plan to transfer its interest in OW USA's receivables to OW USA's liquidating trust. *See* Debtors' First Modified Liquidation Plans at 8, 28, *In re O.W. Bunker Holding N. Am. Inc.*, No. 14-51720 (Bankr. D. Conn. Dec. 15, 2015) (Doc. 1279-1). But the $2.99 million is an OW *Far East* receivable, not an OW *USA* receivable. ING's giving up its right to OW USA's receivables thus appears to have no bearing on what would happen to the money if COSCO paid ING directly, or if ING claimed the funds after COSCO paid them to OW Far East. To the contrary, OW USA's liquidation plan does not appear to envision recoveries from foreign affiliates (like OW Far East) that acted as contract suppliers. On transactions like those at issue here, in which OW USA acted as an intermediary between the contract supplier (OW Far East) and the physical supplier (NuStar), the plan tells the OW USA liquidating trust to instruct customers like COSCO to pay invoices sent by the contract supplier. *See id.* at 29. The plan is silent on whether OW USA's liquidating trust should expect to see any of the money paid to the contract supplier under those invoices. And given what NuStar describes as the "collapse of the international O.W. Bunker ('OW') group of companies," as well as our having no reason to think ING or some other entity would not have a claim superior to the OW USA liquidating trust's, prospects for payment from OW Far East appear remote at best based on what NuStar has presented to us.

NuStar has not shown that it is "likely, as opposed to merely speculative" that the nonpayment of the fuel "will be 'redressed by a favorable decision'" on ING's liens. *Lujan*, 504 U.S. at 561 (quoting *Simon v. Eastern Ky. Welfare*

*Rights Organization*, 426 U.S. 26, 38 (1976)). We thus lack jurisdiction to review the district court's ruling that OW Far East assigned its maritime liens to ING, and we must dismiss NuStar's appeal of that ruling. *See Hollingsworth*, 570 U.S. at 715.[5]

\* \* \*

The district court's judgment rejecting NuStar's maritime liens is AFFIRMED. NuStar's appeal of the district court's judgment awarding ING Bank judgment against the vessels is DISMISSED.

---

[5] NuStar suggests that if it lacks standing to appeal the district court's assignment ruling, we should vacate it. But we would vacate only if the district court also lacked jurisdiction, which it did not. ING's claim against COSCO alleged that COSCO owed ING $2.99 million. That is a classic, justiciable dispute over money. Of course, our inability to review the district court judgment as to ING means that this case is not resulting in circuit precedent on the question whether the liens are assignable to ING. So to the extent this issue arises in other OW Bunker cases in this circuit, it remains an open question.