828 F.2d 522
 1988 A.M.C. 252
 FARWEST STEEL CORPORATION, Plaintiff-Appellant,
and
Shuman Equipment, Inc., Plaintiff-Intervenor-Appellant,
v.
BARGE SEA-SPAN 241, aka Barge Ceres, her tackle, gear, and
furnishings, in rem; and West Coast Charters,
Inc., a corporation; Defendants-Appellees.
 Nos. 86-3668, 86-3735.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 9, 1987.
Decided Sept. 18, 1987.
 
 Lloyd D. Weisensee, Portland, Or., for plaintiff-appellant.
 Alex L. Parks, Portland, Or., for defendants-appellees.
 Steven Y. Orcutt, Portland, Or., for plaintiff-intervenor-appellant.
 Appeal from the United States District Court for the District of Oregon.
 Before KOELSCH and GOODWIN, Circuit Judges, and HENDERSON,* District Judge.
 GOODWIN, Circuit Judge:
 
 
 1
 In this comeback[1] case, Farwest Steel Corporation ("Farwest") and an intervenor corporation appeal the district court's refusal to grant Farwest a maritime lien on the Barge Sea-Span 241. We hold that Farwest failed to establish a maritime lien because it did not supply steel on the order of the barge's owner or of a person authorized by the owner within the meaning of 46 U.S.C. Sec. 971.
 
 
 2
 In June 1980, Lakeview Charters bought the Barge Sea-Span 241, later renamed Barge Ceres (hereinafter "the barge"). The barge needed extensive repairs and reconstruction. In August 1980, Lakeview contracted for repairs with Nichols Boat and Barge Builders, Inc., and had the barge towed to Nichols' yard in Vancouver, Washington. Nichols in turn subcontracted with various suppliers, including Farwest and Shuman Equipment[2] for the purchase of equipment and supplies to repair the barge.
 
 
 3
 In the spring of 1981, West Coast Charters, Inc. bought Lakeview and all its interests. West Coast obtained title to the barge and assumed the rights and liabilities of Lakeview under the repair contract with Nichols. West Coast then paid Nichols all that was owed for work done on the Lakeview-Nichols contract and also paid Nichols for work done on the barge after West Coast assumed title.
 
 
 4
 In October 1981, Nichols became financially unable to continue work on the barge, and West Coast completed the repairs. Many of Nichols' suppliers went unpaid.
 
 
 5
 Farwest arrested the barge and brought this action in the district court asserting two bases of relief. First, Farwest sought an in rem maritime lien judgment against the barge for the value of the steel and other supplies. Second, Farwest sought an in personam judgment for the value of unpaid supplies against Nichols, Lakeview and West Coast. The district court quashed the arrest of the barge, by interlocutory order, reasoning that the repair contract was not a maritime contract, and therefore federal courts would lack jurisdiction over the action.
 
 
 6
 At trial before another judge, the district court held that the repair contract was a maritime contract and that jurisdiction existed in the federal courts. However, the district court also held that Farwest had failed to establish entitlement to a lien. The court determined that under the Federal Maritime Lien Act, 46 U.S.C. Sec. 971 et seq. ("FMLA"), Nichols lacked authority to bind the ship on behalf of supply subcontractors.
 
 
 7
 Farwest appealed the denial of the lien to this court. In Farwest Steel Corp. v. Barge Sea-Span 241, 769 F.2d 620 (9th Cir.1985) (Farwest I), we began by considering whether federal in rem jurisdiction over the barge survived the quash order, the failure to post a bond, and the sale of the barge to Carnation Company, a nonparty. We determined that jurisdiction had not been lost because the defendant's lawyer at oral argument stated that he was authorized to consent to in rem jurisdiction on behalf of Carnation. On the merits, we were unable to decide the question of entitlement to a lien without the benefit of further factfinding as to the degree of Farwest's reliance on the credit of Nichols. We reversed and remanded the matter to the district court for factfinding on the reliance question.
 
 
 8
 The district court, on remand, found as a fact that Farwest had relied exclusively on the credit of Nichols and not at all on the credit of the barge. As a consequence, the district court denied the lien. Farwest appeals.
 
 
 9
 Since Farwest I, ownership of the barge has twice changed hands. In late 1984, Carnation sold the barge to Sause Brothers Ocean Towing Company, Inc., which in turn later sold the vessel to Manna Pro Corporation. Neither Manna Pro nor Sause Brothers has ever consented to in rem jurisdiction. It is now again contended that the sale of the vessel to a party who, unlike Carnation, has not consented to in rem jurisdiction over the vessel, divests in rem jurisdiction. We are not persuaded.
 
 
 10
 It is true that the release or removal of a vessel from the federal court's control generally terminates in rem jurisdiction unless a release was the result of mistake, fraud or other impropriety. American Bank of Wage Claims v. Registry of the District Court of Guam, 431 F.2d 1215, 1218-19 (9th Cir.1970). As we held in Farwest I, however, a further exception is established by the consent of the vessel's owner to in rem jurisdiction. Farwest, 769 F.2d at 622. In addition, under the doctrine of lis pendens, it is well established that one who buys property that is the subject of litigation assumes all the risks and burdens of the seller with regard to the pending case. Restatement of Judgments 2d Sec. 44 (1980). Cf. Sheppard v. Taylor, 30 U.S. (Pet.) 675, 712, 8 L.Ed. 269 (1831). The lis pendens rule applies even if, as is contended here, the buyer was unaware of the pendency of the litigation involving the property purchased. See Restatement of Judgments 2d Sec. 44 comment 1 (purchaser better able to protect himself vis-a-vis seller than the lien claimant). Thus, we hold that the sale of the barge, subsequent to Farwest I, to the Sause Brothers and Manna Pro nevertheless does not invalidate the in rem jurisdiction consented to by the prior owner Carnation.
 
 
 11
 Entitlement to a federal maritime lien is established by proof of the elements of the federal maritime lien statute, 46 U.S.C. Sec. 971 (1982). Section 971 provides:
 
 
 12
 Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel.
 
 
 13
 Id. Thus, to prevail, lien claimants must have "(1) furnish[ed] repairs, supplies, or other necessaries, (2) to any vessel, (3) 'upon the order of the owner of such vessel, or of a person authorized by the owner.' " Foss Launch & Tug Co. v. Char Ching Shipping U.S.A., Ltd., 808 F.2d 697, 699 (9th Cir.1987).
 
 
 14
 In this action, it is not disputed that Farwest furnished necessaries to the barge within the meaning of section 971. The element in dispute is whether Farwest provided steel supplies to the vessel upon the order of an authorized person. West Coast contends that Nichols ordered the steel and was not at that time a "person authorized by the owner" of the barge within the meaning of section 971 because Nichols was entrusted solely with authority to repair the barge and never with management authority over the vessel.
 
 
 15
 The law of the case doctrine posits that matters decided on appeal cannot be relitigated in a later appeal of the same case, unless the original panel made a plain error of law. Appleton Electric Co. v. Graves Truck Line, Inc., 635 F.2d 603, 607 (7th Cir.1980), cert. denied, 451 U.S. 976, 101 S.Ct. 2058, 68 L.Ed.2d 357 (1981). Farwest contends that the question of the extent of Nichols' authority for purposes of section 971 was correctly determined in Farwest I. In Farwest I, however, we did not reach the issue. We simply stated that Farwest would be entitled to a lien if it could prove that it relied at least partly on the barge for payment, remanding for factfinding on the existence of such reliance. Thus, even if our language in Farwest I implied that Nichols' status as an authorized person turned on whether reliance on the vessel could be established, closer inspection of the FMLA reveals that the inquiries are independent.
 
 
 16
 Whether Nichols was authorized by the barge owner to procure necessaries is an entirely different question from whether Farwest relied at least partly on the credit of the barge when supplying steel to Nichols for use on the barge. The former is a necessary element of section 971. The latter is a defense by which a party may show that a lien claimant has "waived" entitlement to a lien. 46 U.S.C. Sec. 974 (1982). Such a waiver may occur as a result of exclusive reliance on a source of payment other than the credit of the vessel. See, e.g., Equilease Corp. v. M/V Sampson, 793 F.2d 598, 606 (5th Cir.) (en banc) (waiver of lien occurred as a result of claimant's exclusive reliance on personal credit of vessel owner), cert. denied, --- U.S. ----, 107 S.Ct. 570, 93 L.Ed.2d 575 (1986).
 
 
 17
 Thus, although section 974 permits a party to rebut a lien claimant's entitlement to a lien by showing waiver (i.e. nonreliance on the vessel), the question of reliance is properly considered only after a claimed lien has met the requirements of section 971. Therefore, in Farwest I, if we suggested that Farwest could satisfy the "authorized person" requirement of section 971 by showing reliance on the credit of the vessel, we led the parties astray. Farwest was never relieved of a legal duty to show that the barge owner authorized Nichols to bind the ship to pay for necessaries. As a consequence, we are not bound by the law of the case doctrine in this appeal with respect to the section 971 analysis because in Farwest I we did not address the question whether the district court erred in holding that Nichols did not qualify as an authorized person within the meaning of section 971. We now belatedly turn to that inquiry.
 
 
 18
 The scope of the phrase "person authorized by the owner" is clarified in 46 U.S.C. Sec. 972 (1982). That section provides that:
 
 
 19
 The following persons shall be presumed to have authority from the owner to procure ... necessaries for the vessel: the managing owner, ship's husband, master, or any person to whom the management of the vessel at the port of supply is intrusted.
 
 
 20
 Id. (emphasis added).
 
 
 21
 Of the four enumerated categories, the fourth "catch-all" category would at first reading appear to reach the status of Nichols, the general repair contractor. On the other hand, it cannot be said that acceptance of responsibility for a repair approximates a delegation of authority over the movements of a vessel. See Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co., 310 U.S. 268, 279, 60 S.Ct. 937, 942, 84 L.Ed. 1197 (1940) ("Management is a broad[ ] term connoting direction and control for the purposes for which the vessel is used"). Congress could have enumerated the category of contractor for ship repairs under section 972 but did not do so. Indeed, solely on the face of section 972, a subcontractor would be ill-advised to expect any source of repayment other than the credit of the general contractor.
 
 
 22
 More important, in a line of cases beginning with The Juniata, 277 F. 438, 440-41 (D.Md.1922), where subcontractor suppliers have sought federal maritime liens, courts interpreting section 972 have uniformly held that the general repair contractor was not endowed with sufficient "management" authority to support a section 971 lien. Sands Construction Co., Inc. v. United Virginia Bank, 1985 AMC 1165, 1167 (E.D.Va.1984); AAB Electrical Ind. v. Control Masters, 1980 AMC 1795, 1799-1801 (E.D.La.1980). See generally, Daigle and Scowcroft, "Payment for Services and Supplies Furnished in Maritime Commerce," 18 J.Mar.L. & Comm. 219, 240 (April, 1987).
 
 
 23
 A leading treatise summarizes the case law rule as follows:
 
 
 24
 [B]ecause it can rarely be shown that the contractor was acting not as a contractor but as the agent of the owner, a subcontractor will normally not be entitled to a lien since he extends credit to the contractor and not the ship.
 
 
 25
 2 Benedict on Admiralty Sec. 38 n. 2 (7th Ed.1986). The sole exception to the rule against the subcontractor lien will occur where the subcontractor has been engaged by a general contractor in circumstances where the general contractor was acting as an agent at the direction of the owner to engage specific subcontractors for repairs. See Marine Coatings of Alabama, Ltd. v. United States, 792 F.2d 1565, 1569 (11th Cir.1986) (dictum); Sands Construction, 1985 AMC at 1167. See also Shaw Marine Service v. 46-foot Chris-Craft Camelot, 391 F.Supp. 1026, 1028 (W.D.Wash.1975); Gunby Co. v. S.S. Willy, 1942 AMC 932, 933 (D.Md.1942).
 
 
 26
 Here, Nichols' status was that of an independent contractor for repairs rather than of an agent for the owner. The only evidence that tends to show direct authorization for the engagement of subcontractors is a provision in the contract between Nichols and the vessel owner to the effect that any supplies obtained by Nichols for repairing the vessel would become the property of the vessel owner. This provision, however, does not suffice to prove section 971 authority. It may simply have been an attempt by the owners to hedge against any losses. There simply is no significant evidence in the record which indicates that (1) Nichols was acting as anything other than an independent repair contractor, or (2) that the owner intended that Farwest Steel be engaged as a subcontractor.
 
 
 27
 We hold that Nichols was not an authorized person within the meaning of section 971. We therefore affirm the denial of a federal maritime lien.
 
 
 28
 Affirmed.
 
 
 
 *
 Honorable Thelton E. Henderson, United States District Judge, Northern District of California, sitting by designation
 
 
 [1]
 Farwest Steel Corp. v. Barge Sea-Span 241, 769 F.2d 620 (9th Cir.1985)
 
 
 [2]
 As the interests of Farwest and Shuman, plaintiff-intervenor, are identical for purposes of this appeal, we will refer to them collectively as Farwest