**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**
_____

No. 96-30192
Summary Calendar
_____


L&L OIL COMPANY, INC.,

Plaintiff-Appellee,

VERSUS

M/V REBEL, her engines, tackle, gear,
appurtenances, etc. *in rem*, et al.,

Defendants,

EKLOF MARINE CORPORATION,
Owner of the M/V REBEL,

Claimant-Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
(95-CV-2720-F)
_____


August 28, 1996
Before SMITH, BENAVIDES, and DENNIS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:*


This admiralty suit arises out of the bankruptcy of Enjet,

Inc. ("Enjet").  The plaintiff, L&L Oil Company, Inc. ("L&L"),

Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

provided marine gas on Enjet's order for the M/V REBEL.  When Enjet filed for bankruptcy,  L&L turned to the M/V REBEL, *in rem*, for payment.  On cross-motions for summary judgment, the district court entered judgment in favor of L&L, awarding the principal invoice amount, together with pre- and post-judgment interest, plus costs.  Eklof Marine Corporation ("Eklof"), owner *pro hac vice*, appeals, and we affirm.

## I.

In 1983, Enjet entered into a tanker voyage charter party with Eklof under which the vessel agreed to buy fuel from Enjet "at all ports where such requirements arise and where Enjet is able to supply, always provided that the prices quoted are competitive."[1]  In return, Enjet agreed to certain conditions that insulated Eklof from variations in the market price of fuel.

L&L delivered 160,000 gallons of marine gas oil to the M/V REBEL in November and December 1994.  L&L acted at the request of

---

[1] Article 10 of the voyage charter party stated:

Fuel Escalation Clause:  It is mutually understood and agreed Charterer will pay Owner for any fuel costs in excess of fifty-five cents ($0.55) per gallon.  Owner will pay Charterer any fuel savings below fifty cents ($0.50) per gallon.  Owner will purchase fuel for the performance of this contract from Enjet at all ports where such requirements arise and where Enjet is able to supply, always provided that the prices quoted are competitive.  In the event of lower prices being quoted by another supplier at the port(s) in question, Owners undertake to give Enjet the opportunity to match such quotes.

Enjet and prepared bunker receipts[2] that were supplied by Enjet and bore its logo and address. The receipt contained the following cautionary language:

> No disclaimer of any type or form will be accepted on this marine Bunker Receipt, and if any words of disclaimer are applied, they will not alter, impair or waive ENJET INC's maritime lien against the vessel's ultimate responsibility for the debt incurred through this transaction.

L&L presented the receipts to the chief engineer for his signature.

L&L invoiced Enjet and the M/V REBEL for the fuel in the amount of $81,280, net due in thirty days, with specified interest if not paid timely. Enjet invoiced Eklof for the fuel and received $53,250. Enjet never paid L&L and filed for chapter 11 bankruptcy protection.

II.

The district court granted L&L's motion for summary judgment, finding that L&L had a maritime lien under the maritime commercial instruments and liens act ("the Act"), 46 U.S.C. § 31341 *et seq.* (West Supp. 1995), which creates a maritime lien in favor of "a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner." Finding that L&L was a "person" and that it had provided necessaries to a vessel, the court turned to the central issue in the case: whether Enjet had authority to purchase such necessaries for the M/V REBEL.

---

[2] A bunker receipt acknowledges delivery of marine gas oil.

The court determined that Enjet had authority to purchase necessities and bind the vessel under the Act. The court noted that under § 31341(a)(3), a "person to whom the management of the vessel at the port of supply is intrusted" is presumed to have such authority. Relying on precedent finding that a charterer has such managerial powers, the court concluded that Eklof had failed to present any evidence rebutting the presumption contained in the Act.

Concluding that Enjet had actual authority to bind the vessel to a contract for necessities, the court rejected Eklof's argument that L&L did not have actual knowledge of Enjet's authority; the court found that knowledge was necessary only when actual authority was lacking. The court also rejected Eklof's assertion that the "restrictive repair contractor" line of cases applies to this case.[3] The court determined that those cases are inapplicable because there the contractor did not have actual authority to bind the vessel, a characteristic that distinguishes Enjet.

Having concluded that L&L was entitled to a maritime lien, the district court turned its attention to the claim that L&L had waived its lien by using Enjet's bunker receipts. According to the court:

> Although maritime liens may be waived or assigned, the Fifth Circuit has insisted upon a strict standard of

---

[3] *See, e.g., Crescent City Marine, Inc. v. M/V NUNKI*, 20 F.3d 665, 668-69 (5th Cir. 1994); *Farwest Steel Corp. v. Barge Sea Span 241*, 828 F.2d 522, 525-26 (9th Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988).

4

proof.  To show waiver, "evidence must be produced that would permit the inference that the supplier purposefully intended to forego the valuable privilege which the law accords."  [*Gulf Trading & Transp. Co. v. Vessel HOEGH SHIELD*, 658 F.2d 363, 368 (5th Cir. 1981)].  Proof that a supplier "deliberately intended to look solely to the owner's personal credit" to satisfy his debt, for instance, would meet this standard. [*Equilease Corp. v. M/V SAMPSON*, 793 F.2d 598, 606 (5th Cir. 1986)].  Although "the formalities of assignment . . . have not been rigidly defined," [*Tramp Oil & Marine, Ltd. v. M/V MERMAID I*, 630 F. Supp. 630, 634 (D. P.R. 1986)], the same principles of clarity apply.  *See id.* (holding, in case concerning assignment of maritime lien incurred for bunker oil, that "[a]ssignments must be in writing and notice thereof is to be given to the debtor."); *Vulcan Materials Co. v. Vulica Shipping Co., Ltd.*, 859 F. Supp. 242, 247 (W.D. La. 1994) (citing *Tramp Oil*).

The record does not satisfy Fifth Circuit require-ments.  L&L's use of Enjet's bunker receipts and its invoicing of Enjet do not constitute purposeful conduct sufficient to establish waiver.  Both clearly show the name of the vessel. *See Gulf Trading & Transp. Co.*, 658 F.2d at 368 (holding that no waiver occurred in case where fuel supplier sent receipts to charterer that showed the name of the vessel).  Neither do the words printed on the receipts have any effect; they appear to simply serve notice to the ship's master that Enjet preserved any maritime lien of its own, and that its rights could not be changed by any additional disclaiming language.  The clause says nothing and does nothing about the rights of L&L.  And no dealings between L&L and Enjet suggest that L&L assigned its lien or that Enjet was subrogated to any of L&L's claims against the REBEL.  At most, the clause language invoked by the defendant placed L&L on notice that Enjet, too, meant to preserve its lien rights against the vessel.  The Court simply cannot infer waiver or assignment of a lien on these facts.

Finally, the court awarded prejudgment interest at the rate called for in the invoices from the time the invoices were sent. The court found that good faith litigation over liability does not constitute the "peculiar circumstances" necessary to deviate from

5

the general rule that such awards are the rule rather than the exception.

The able district court addressed each of Elkof's contentions in its thorough opinion.  We AFFIRM, essentially for the reasons given by the district court.