**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| BUNKER HOLDINGS LTD.,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>YANG MING LIBERIA CORP., Owner<br>of Defendant M/V YM Success,<br>*Claimant-Appellee*,<br><br>M/V YM SUCCESS (IMO 9294800),<br>her tackle, boilers, apparel,<br>furniture, engines, appurtenances,<br>etc., in rem,<br>*Defendant-Appellee*. | No. 16-35539<br><br>D.C. No.<br>3:14-cv-06002-<br>BHS<br><br><br>OPINION |

Appeal from the United States District Court
for the Western District of Washington
Benjamin H. Settle, District Judge, Presiding

Argued and Submitted June 14, 2018
Seattle, Washington

Filed October 11, 2018

Before:  Milan D. Smith, Jr. and Paul J. Watford, Circuit Judges, and Douglas L. Rayes,[*] District Judge.

Opinion by Judge Watford

---

**SUMMARY**[**]

---

**Maritime Law**

The panel affirmed the district court's summary judgment against a supplier of bunkers (marine fuel) in the supplier's in rem action for a maritime lien against a containership, and the panel reversed the district court's award of costs to the vessel owner.

Assuming that United States law applies, the panel held that, under 46 U.S.C. § 31342(a), the bunker supplier would be entitled to a maritime lien if it provided necessaries to a vessel on the order of the owner or a person authorized by the owner.  Agreeing with other circuits, the panel held that the supplier did not provide the bunkers on the order of the owner or a person authorized by the owner because the owner ordered the bunkers from a fuel broker, which purchased the bunkers, pursuant to a separate contract, from the supplier and did not act as the owner's agent or have authority to bind the vessel.

---

[*] The Honorable Douglas L. Rayes, United States District Judge for the District of Arizona, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel reversed the district court's award of costs, under a local rule, to the vessel owner for the cost of keeping in place a letter of undertaking that enabled the owner to secure the release of the ship, which had been arrested at the outset of the action. The panel held that the local rule lacked statutory authority because premiums paid on undertakings or bonds are not authorized by 28 U.S.C. § 1920 or by any other statute. The panel wrote that this result was undesirable, but a return to an earlier practice awarding such costs would require action by Congress or by the Supreme Court pursuant to its delegated rulemaking authority under 28 U.S.C. § 1925.

**COUNSEL**

Briton P. Sparkman (argued) and George M. Chalos, Chalos & Co. P.C., Houston, Texas, for Plaintiffs-Appellants.

Barbara L. Holland (argued) and Tyler W. Arnold, Garvey Schubert Barer, Seattle, Washington, for Claimant-Appellee.

Erich P. Wise and Alisa Manasantivongs, Flynn Delich & Wise LLP, Long Beach, California; Bruce G. Paulsen, Jeffrey M. Dine, and Brian P. Maloney, Seward & Kissell LLP, New York, New York; for Amicus Curiae ING Bank N.V.

**OPINION**

WATFORD, Circuit Judge:

This is an *in rem* action for a maritime lien brought by Bunker Holdings Ltd. against the containership M/V YM Success. Bunker Holdings supplied bunkers (marine fuel) to the YM Success while the ship was docked in Nakhodka, Russia. Under United States law, which we will assume applies here, Bunker Holdings is entitled to a maritime lien if it "provid[ed] necessaries to a vessel on the order of the owner or a person authorized by the owner." 46 U.S.C. § 31342(a).

Bunker Holdings provided "necessaries" to a "vessel," as the statute requires, because bunkers are considered necessaries and the YM Success qualifies as a vessel. The only issue is whether Bunker Holdings provided the bunkers "on the order of the owner or a person authorized by the owner." On cross-motions for summary judgment, the district court held that Bunker Holdings could not satisfy this last requirement. We agree with that conclusion.

The relevant facts are not in dispute. The owner of the YM Success, Yang Ming Liberia Corp., ordered the bunkers from O.W. Bunker Far East (Singapore) Pte. Ltd., which we will refer to as OWB Far East for short. Under the terms of their contract (simplified somewhat), Yang Ming agreed to buy 3,500 metric tons of fuel oil from OWB Far East for delivery to the YM Success on specified dates at a price of $498.00 per metric ton. The contract designated OWB Far East as the "seller" and Yang Ming as the "buyer." Yang Ming knew that in all likelihood OWB Far East, a fuel broker, would not supply the bunkers itself, but it did not direct OWB Far East to select any particular supplier. OWB Far East decided to purchase the bunkers from Bunker

Holdings, and those two companies entered into their own separate contract.  Under the terms of their contract, Bunker Holdings agreed to sell 3,500 metric tons of fuel oil to OWB Far East at a price of $480.33 per metric ton.  Bunker Holdings then supplied the bunkers to the YM Success and billed OWB Far East for payment.  Shortly thereafter, OWB Far East filed for bankruptcy, leading Bunker Holdings to pursue payment through this maritime lien action against the ship.

These facts make clear that Bunker Holdings did not provide bunkers to the YM Success "on the order of the owner" of the vessel.  Yang Ming placed its order with OWB Far East, not Bunker Holdings.

Because it did not provide the bunkers on the order of the vessel's owner, Bunker Holdings is entitled to a maritime lien only if it can show that it provided the bunkers "on the order of . . . a person authorized by the owner."  46 U.S.C. § 31342(a).  Bunker Holdings supplied the bunkers "on the order of" OWB Far East, so it must show that OWB Far East was "a person authorized by the owner" to bind the vessel.  A separate statutory provision, § 31341(a), provides a list of persons who are "presumed to have authority to procure necessaries for a vessel" on the ship's credit.  They include the owner, the master, and "a person entrusted with the management of the vessel at the port of supply." § 31341(a)(1)–(3).  OWB Far East does not fall into any of those categories.  The statute also includes, as relevant here, "an agent appointed by . . . the owner."  § 31341(a)(4)(A). But Bunker Holdings submitted no evidence that OWB Far East was acting as Yang Ming's agent when OWB Far East contracted with Bunker Holdings to purchase bunkers for the YM Success.

Unable to rely on the statutory list of persons with presumed authority to bind the vessel, Bunker Holdings grounds its claim on our decision in *Marine Fuel Supply & Towing, Inc. v. M/V Ken Lucky*, 869 F.2d 473 (9th Cir. 1988). There, we ruled that the plaintiff was entitled to a maritime lien in circumstances not unlike those present in this case. Bulkferts, the subcharterer of the Ken Lucky, placed an order for bunkers with Brook Oil, which in turn placed an order with the plaintiff, Marine Fuel. *Id.* at 475. Marine Fuel was the entity that actually supplied the bunkers to the vessel. *Id.* We held that Marine Fuel was entitled to a maritime lien, but we based our holding on a critical factual admission made by the defendant. The defendant admitted that Marine Fuel sold the bunkers *to Bulkferts*, pursuant to an order originating from Bulkferts. *Id.* at 476–77. Based on that admission, we treated the case as though Bulkferts had ordered the bunkers directly from Marine Fuel and hence assumed that Marine Fuel had supplied the bunkers "on the order of" Bulkferts. Since Bulkferts was one of the entities with presumed authority to bind the vessel, *see id.* at 476 & n.3, each of the statutory requirements for a maritime lien was satisfied. In ruling for Marine Fuel, we explicitly refused to consider whether Brook Oil was authorized to bind the ship as Bulkferts' agent. *Id.* at 477.

Bunker Holdings cannot rely on our decision in *Ken Lucky* because the critical factual admission present there is absent here. Yang Ming never admitted that it ordered the bunkers from Bunker Holdings; it has asserted throughout, and the undisputed facts confirm, that it ordered the bunkers from OWB Far East. In contrast to the single transaction we assumed was involved in *Ken Lucky*, two independent transactions are involved in this case: one between Yang Ming and OWB Far East, and a second transaction between

OWB Far East and Bunker Holdings. That key factual difference renders this case distinguishable from *Ken Lucky*.

In our view, this case is controlled not by *Ken Lucky*, but instead by our decisions in *Port of Portland v. M/V Paralla*, 892 F.2d 825 (9th Cir. 1989), and *Farwest Steel Corp. v. Barge Sea-Span 241*, 828 F.2d 522 (9th Cir. 1987). In both of those cases, ship owners entered into contracts with general contractors for repair of the vessels. The general contractors, in the course of performing their work, negotiated separate agreements with subcontractors for certain necessaries, which the subcontractors provided to the vessels. We held that the subcontractors were not entitled to a maritime lien because they had contractual relationships only with the general contractors, and in most cases "a general contractor does not have the authority to bind a vessel." *Port of Portland*, 892 F.2d at 828; *see Farwest Steel*, 828 F.2d at 526. There is one exception to that general rule, which applies when the vessel owner directs the general contractor to use a particular subcontractor. In that scenario, the general contractor essentially acts as the owner's agent and thus exercises authority to bind the vessel. *Farwest Steel*, 828 F.2d at 526.

The general rule stated in *Port of Portland* and *Farwest Steel* governs this case because OWB Far East occupied a position no different from that of a general contractor. Under its contract with Yang Ming, OWB Far East assumed the obligation to supply bunkers to the YM Success. OWB Far East entered into a separate contract with Bunker Holdings to assist OWB Far East in fulfilling its own contractual obligations to Yang Ming. OWB Far East was not acting as Yang Ming's agent and lacked authority to bind the vessel, so its contract with Bunker Holdings could not give rise to a maritime lien in Bunker Holdings' favor. The

exception to the general rule does not apply because Yang Ming did not direct or require OWB Far East to purchase the bunkers from Bunker Holdings.

In sum, we agree with the district court's conclusion that Bunker Holdings is not entitled to a maritime lien against the YM Success. In so holding, we join three other circuits that have reached the same conclusion on nearly identical facts. *See Valero Marketing & Supply Co. v. M/V Almi Sun*, 893 F.3d 290, 294–95 (5th Cir. 2018); *ING Bank N.V. v. M/V Temara*, 892 F.3d 511, 521–22 (2d Cir. 2018); *Barcliff, LLC v. M/V Deep Blue*, 876 F.3d 1063, 1071 (11th Cir. 2017).

The one remaining issue concerns the district court's award of costs. After Bunker Holdings arrested the YM Success at the outset of this action, the parties agreed that Yang Ming could secure the ship's release by posting substitute security in the form of a letter of undertaking for $2.4 million. *See* 28 U.S.C. § 2464(a); Supplemental Admiralty and Maritime Claims Rule E(5). Yang Ming paid approximately $54,000 to keep the letter of undertaking in place during the 17 months this action remained pending in the district court. The court awarded Yang Ming that amount as a taxable cost under Rule 54(d)(3)(B) of the Local Rules of Civil Procedure for the Western District of Washington, which provides that "[r]easonable premiums paid on undertakings or bonds or security stipulations shall be allowed where the same have been furnished by reason of express requirement of law, rule, or court order." The court viewed the cost of obtaining the letter of undertaking as "tantamount to a premium on an undertaking, bond, or security."

Bunker Holdings argues that the costs award is invalid because Local Rule 54(d)(3)(B) lacks statutory authorization, at least as applied in admiralty and maritime

cases.   We agree with Bunker Holdings on this point. Federal courts may not award costs beyond those mentioned in 28 U.S.C. § 1920 unless another federal statute authorizes them to do so.  *West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83, 86 (1991); *see Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560, 573 (2012).  Premiums paid on undertakings or bonds are not included among the six categories of taxable costs mentioned in § 1920.  A separate statute, 28 U.S.C. § 1925, does authorize the Supreme Court to promulgate rules specifying additional categories of costs that may be awarded in admiralty and maritime cases.  But thus far the Supreme Court has not issued a rule allowing a party to recover as a taxable cost the expenses incurred in posting a bond or other security under 28 U.S.C. § 2464 and Supplemental Rule E(5).  The district court therefore lacked authority to award Yang Ming the costs it incurred in posting the letter of undertaking in this case.

Although we are constrained by precedent to rule as we have, this strikes us as an undesirable result.  When a ship is arrested and held in the marshal's custody, the marshal's expenses may be taxed as costs.  28 U.S.C. § 1921(a)(1)(E). Posting substitute security to allow for the vessel's release avoids those expenses, often at a lower cost.  If the plaintiff can be forced to bear the marshal's expenses when the ship remains in custody, a district court should have the discretion to award a prevailing ship owner the expenses it incurs to post substitute security allowing for the ship's release. Courts sitting in admiralty have historically awarded such costs to prevailing ship owners, *see, e.g.*, *The South Portland*, 95 F. 295, 296 (D. Wash. 1899), but that was before the Supreme Court held that each item of a costs award must be grounded on an explicit grant of statutory authority.  A return to that earlier tradition seems warranted, but it will require action either by Congress or by the

Supreme Court pursuant to its delegated rulemaking authority under 28 U.S.C. § 1925. Until then, we do not think district courts may allow prevailing ship owners to recover as a taxable cost the expenses incurred in posting substitute security, even if a local court rule purports to authorize such an award. Accordingly, we reverse the district court's award of costs to Yang Ming.

**AFFIRMED in part; REVERSED in part.**

The parties shall bear their own costs on appeal.