17-1458-cv
*Clearlake Shipping PTE Ltd. v. NuStar Energy Services, Inc.*

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2017

(Argued: April 19, 2018    Decided: December 19, 2018)

Docket No. 17-1458-cv[*]

_____

CLEARLAKE SHIPPING PTE LTD.,

      *Plaintiff-Counter-Defendant-Appellee,*

- v. -

NUSTAR ENERGY SERVICES, INC.,

      *Defendant-Cross-Defendant-Cross-Claimant-Appellant,*

ING BANK N.V.,

_____

[*]    This appeal was consolidated for purposes of oral argument with the appeals in Nippon Kaisha Line Ltd. v. NuStar Energy Services, Inc., No. 17-1378, which is resolved today in a summary order, and U.S. Oil Trading LLC v. M/V VIENNA EXPRESS, No. 17-0922, and Hapag-Lloyd Aktiengesellschaft v. U.S. Oil Trading LLC, No. 17-0931, which are resolved today in a separate opinion.

*Defendant-Counter-Claimant-Cross-Claimant-Cross-Defendant-Appellee,*

O.W. BUNKER (SWITZERLAND) SA, O.W. BUNKER USA, INC., O.W. BUNKER NORTH AMERICA, INC., O.W. BUNKER HOLDING NORTH AMERICA INC.,

*Defendants.*[**]

_____

Before:  KEARSE, CABRANES, and LOHIER, *Circuit Judges.*

Appeal by interpleader defendant NuStar Energy Services, Inc. ("NuStar"), from orders and an April 18, 2017 partial final judgment of the United States District Court for the Southern District of New York, Valerie E. Caproni, *Judge*, rejecting its claims of entitlement to maritime liens against two chartered vessels to which NuStar, pursuant to arrangements with and among other entities, physically provided marine fuel for which it was not paid following the bankruptcies of the entity to which NuStar sold the fuel and of that entity's affiliate from which the charterer had ordered the fuel.  The district court denied NuStar's motion for summary judgment on its maritime-lien claims and entered a partial final judgment dismissing those claims, ruling principally that the claims were governed by the

_____

[**]    The Clerk of Court is instructed to amend the official caption to conform with the above.

2

Commercial Instruments and Maritime Liens Act ("CIMLA"), 46 U.S.C. § 31301 *et seq.*, and that bunker suppliers who were subcontractors were not entitled to maritime liens because their sales were not made "on the order of the owner or a person authorized by the owner" of the vessel, *id*. § 31342(a). *See Clearlake Shipping PTE Ltd. v. O.W. Bunker (Switzerland) SA*, 239 F.Supp.3d 674 (S.D.N.Y. 2017). On appeal, NuStar contends principally that it was entitled to the claimed liens in light of CIMLA's plain text and purpose and as a matter of equity, regardless of its lack of contractual privity with the vessels' owner/charterer or their agent. We see no error in the district court's interpretation of CIMLA or its ruling that maritime liens may not properly be granted based on principles of equity. And as NuStar—unlike the physical supplier in U.S. Oil Trading LLC v. M/V VIENNA EXPRESS, No. 17-0922, and Hapag-Lloyd Aktiengesellschaft v. U.S. Oil Trading LLC, No. 17-0931, which are also resolved today—has not pointed to evidence that the owner or charterer or their agent directed that NuStar be the physical supplier, NuStar's claims are not meaningfully distinguishable from those rejected in *ING Bank N.V. v. M/V TEMARA*, 892 F.3d 511 (2d Cir. 2018).

Affirmed.

3

MARIE E. LARSEN, New York, New York (JamesH. Hohenstein, Holland & Knight, New York, New York, on the brief), *for Plaintiff-Counter-Defendant-Appellee.*

JONATHAN S. FRANKLIN, Washington, D.C. (Mark Emery, Norton Rose Fulbright US, Washington, D.C.; Keith B. Letourneau, Blank Rome, Houston, Texas, on the brief), *for Defendant-Cross-Defendant-Cross-Claimant-Appellant.*

BRUCE G. PAULSEN, New York, New York (Brian P. Maloney, Seward & Kissel, New York, New York, on the brief), *for Defendant-Counter-Claimant-Cross-Claimant-Cross-Defendant-Appellee.*

KEARSE, *Circuit Judge*:

Interpleader defendant NuStar Energy Services, Inc. ("NuStar"), a physical supplier of marine fuel ("bunkers") to two vessels time-chartered by interpleader plaintiff Clearlake Shipping PTE Ltd. ("Clearlake"), appeals from orders and an April 18, 2017 partial final judgment of the United States District Court for the Southern District of New York, Valerie E. Caproni, *Judge*, denying NuStar's motion for summary judgment and dismissing its claims to maritime liens against the vessels. The district court ruled that, under the Commercial Instruments and Maritime Liens

4

Act ("CIMLA"), 46 U.S.C. § 31301 *et seq.*, NuStar was not entitled to maritime liens because it provided the fuel "on the order of" an entity other than "the owner or a person authorized by the owner" of the vessels, *id*. § 31342(a). *See Clearlake Shipping PTE Ltd. v. O.W. Bunker (Switzerland) SA*, 239 F.Supp.3d 674 (S.D.N.Y. 2017) ("*Clearlake*"). On appeal, NuStar contends principally that it was entitled to the claimed liens in light of CIMLA's plain text and purpose and as a matter of equity, regardless of NuStar's lack of contractual privity with the vessels' owner or charterer or their agent. We see no error in the district court's interpretation of CIMLA or its ruling that maritime liens may not properly be granted based on principles of equity. And given that—unlike the physical supplier in two companion appeals, U.S. Oil Trading LLC v. M/V VIENNA EXPRESS, No. 17-0922, and Hapag-Lloyd Aktiengesellschaft v. U.S. Oil Trading LLC, No. 17-0931, which are also decided today *sub nom. U.S. Oil Trading LLC v. M/V VIENNA EXPRESS*, --- F.3d --- (2d Cir. 2018) ("*USOT*")—NuStar has not pointed to evidence that the owner or charterer or their agent directed that NuStar be the physical supplier for the vessels in question, we affirm, as NuStar's claims are not meaningfully distinguishable from those rejected in *ING Bank N.V. v. M/V TEMARA*, 892 F.3d 511 (2d Cir. 2018) ("*Temara*").

# I. BACKGROUND

This case is one of the many resulting from the financial collapse of O.W. Bunker & Trading A/S ("O.W. Denmark") and its subsidiaries and affiliates (collectively the "O.W. Bunker Group"), an international operation that both supplied bunkers to ships and arranged the supply of bunkers by others. *See generally Temara*, 892 F.3d at 515. In the wake of bankruptcy filings by O.W. Bunker Group members, interpleader actions were initiated by numerous owners or charterers of vessels, including the present action by Clearlake, seeking judicial resolution of the competing claims to payment asserted by physical suppliers and by O.W. Bunker Group members that had engaged the physical suppliers. *See, e.g., Clearlake*, 239 F.Supp.3d at 678 ("24 interpleader cases [involving O.W. Bunker Group] . . . were pending before [Judge Caproni] as of June 30, 2015"). In the present case, the following facts, drawn from statements submitted by various parties pursuant to Rule 56.1 of the Local Rules for the Southern District of New York ("Rule 56.1 Statements"), are not in dispute.

In October 2014, Clearlake, charterer of the M/V HELLAS GLORY and the M/V VENUS GLORY (collectively the "Vessels"), acting through its agent AS Tarcona ("Tarcona"), placed orders for fuel bunkers for the Vessels with O.W. Bunker

(Switzerland) SA ("O.W. Switzerland"). O.W. Switzerland, in turn, issued purchase orders to its affiliate O.W. Bunker USA, Inc. ("O.W. USA"). O.W. USA then issued purchase orders to NuStar. Local agents for the Vessels coordinated the deliveries by NuStar. In late October, NuStar delivered the ordered bunkers to the Vessels.

NuStar did not directly contract with Clearlake or with O.W. Switzerland. In early November 2014, NuStar invoiced O.W. USA for the bunkers; O.W. USA invoiced O.W. Switzerland; O.W. Switzerland invoiced Clearlake. On November 7, O.W. Denmark filed for bankruptcy; bankruptcy filings by other members of the O.W. Bunker Group followed. Neither NuStar nor any O.W. Bunker Group entity has been paid for NuStar's bunker deliveries to Clearlake's Vessels.

Clearlake brought the present interpleader action against NuStar, O.W. Switzerland, O.W. USA, and others. In the district court, this case and three others—one other involving NuStar and two involving U.S. Oil Trading LLC ("USOT")—were selected to serve as test cases for the efficient resolution of the various *in rem* claims. Following coordinated discovery, and summary judgment motions by NuStar, USOT, and O.W. Bunker entities that had dealt with the vessels' owners or charterers, the district court addressed these four cases in its opinion in *Clearlake*.

The court stated that maritime liens arise exclusively under CIMLA, that such liens are construed narrowly under the doctrine of *stricti juris*, and that CIMLA "typically require[s]" a finding of "a direct contractual or agency nexus between the supplier and the vessel or its agents." *Clearlake*, 239 F.Supp.3d at 684. The court determined that NuStar had performed as a subcontractor that "lack[ed] a direct connection to the [Vessels]," noting the general rule that a subcontractor cannot assert a maritime lien. *Id*. at 685.

Adverting to an exception to that general rule, the court noted that "'[a]n owner can still become responsible for the services of a subcontractor, if the owner has ordered the general contractor to retain that subcontractor,'" *id*. at 687 (quoting *Port of Portland v. M/V PARALLA*, 892 F.2d 825, 828 (9th Cir. 1989) (*"Port of Portland"*)). However, insofar as is pertinent to the present appeal, the court stated that the record showed at best that Clearlake was merely "aware" that NuStar had been named by O.W. Switzerland as the physical supplier and that Clearlake accepted NuStar only "tacitly." *Clearlake*, 239 F.Supp.3d at 688 n.11. Seeing no evidence in the record that Clearlake had required O.W. Switzerland to use NuStar as the physical supplier, the court concluded that the subcontractor exception was not applicable to NuStar.

8

Accordingly, the district court denied NuStar's motion for summary judgment and effectively granted summary judgment against NuStar on its maritime-lien claims against Clearlake, entering a partial final judgment dismissing those claims.

## II. DISCUSSION

On appeal, NuStar contends principally that it was entitled to maritime liens against the Clearlake Vessels in light of CIMLA's plain text and purpose and as a matter of equity, regardless of a lack of contractual privity between NuStar and Clearlake or its agent. We reject these contentions substantially for the reasons stated by the district court in *Clearlake*.

We see no error in the district court's interpretation of CIMLA or its ruling that maritime liens may not properly be granted based on principles of equity. NuStar's contentions as to the proper interpretation of CIMLA are foreclosed by our recent decision in *Temara*, which involved events not substantially dissimilar to those here. *See generally* 892 F.3d at 519 (CIMLA's "statutory requirements are construed strictly and may not be expanded by construction, analogy[,] or inference" (internal

9

quotation marks omitted)); *id.* at 522-23 (rejecting the concept of entitlement to maritime lien through application of principles of equity).

Nor do we see any error in the district court's conclusion that the exception to the general rule against a subcontractor's entitlement to a maritime lien did not apply to NuStar. As discussed in *USOT*,

> a subcontractor is not entitled to assert a maritime lien "*unless* it can be shown that *an entity authorized to bind the ship controlled the selection of the subcontractor and/or its performance*."

--- F.3d at xxx (quoting *Cianbro Corp. v. George H. Dean, Inc.*, 596 F.3d 10, 17 (1st Cir. 2010) ("*Cianbro*"), and *Valero Marketing & Supply Co. v. M/V ALMI SUN*, 893 F.3d 290, 293 (5th Cir. 2018) ("*Valero*") (emphases ours)).

> "The sole exception to the rule against the subcontractor lien will occur where the subcontractor has been engaged by a general contractor in circumstances *where the general contractor was acting as an agent at the direction of the owner to engage specific subcontractors*" . . . .

*USOT*, --- F.3d at xxx (quoting *Farwest Steel Corp. v. Barge Sea-Span 241*, 828 F.2d 522, 526 (9th Cir. 1987) ("*Farwest*") (emphasis in *USOT*), *cert. denied*, 485 U.S. 1034 (1988)). The exception is applicable "if the owner has ordered the general contractor to retain that subcontractor." *Port of Portland*, 892 F.2d at 828; *see, e.g., Bunker Holdings Ltd. v. Yang Ming Liberia Corp.*, 906 F.3d 843, 846 (9th Cir. 2018) (the "exception to th[e]

10

general rule . . . applies when the vessel owner directs the general contractor to use a particular subcontractor").

As indicated in *Temara* and our other recent decisions in appeals involving fuel suppliers and O.W. Bunker Group entities, a subcontractor is not allowed to assert a maritime lien "without any indication that *a statutorily-authorized entity provided direction*" that that subcontractor be used. *Temara*, 892 F.3d at 522 n.7 (emphasis added); *see, e.g., O'Rourke Marine Services L.P. v. M/V COSCO HAIFA*, 730 F. App'x 89, 91 (2d Cir. 2018) (affirming denial of maritime-lien claim by a physical supplier that did not "adduce evidence that *a statutorily authorized person controlled* [*its*] *selection . . . as the physical supplier*" (emphases added)); *Aegean Bunkering (USA) LLC v. M/T AMAZON*, 730 F. App'x 87, 89 (2d Cir. 2018) (same); *Chemoil Adani Pvt. Ltd. v. M/V MARITIME KING*, No. 16-3944, 2018 WL 3359609, at *2 (2d Cir. July 10, 2018) (same where there was "*no*[] . . . *evidence that a statutorily authorized person controlled the selection* of Chemoil *as the physical supplier*" (emphases added)).

Thus, the subcontractor exception does not apply where there is no significant evidence "that the owner intended that [the physical supplier] be engaged as a subcontractor." *Farwest*, 828 F.2d at 526. Mere awareness by the vessel's owner, charterer, or authorized agent that a particular physical supplier would be used is not

sufficient to permit a conclusion that they had such intent or that they controlled or directed the subcontractor's selection. *See, e.g.*, *Valero*, 893 F.3d at 295; *Cianbro*, 596 F.3d at 17–18; *Port of Portland*, 892 F.2d at 828 (mere knowledge that a particular subcontractor will be used "has never been held to be sufficient to establish a lien").

Insofar as NuStar was concerned, the district court correctly applied these principles in *Clearlake* to conclude that NuStar did not fall within the subcontractor exception. The court viewed the record as showing

> - that NuStar "*d*[*id*] *not argue* that the [Clearlake/Tarcona] contracts *required* O.W. to use [NuStar] as supplier[]," 239 F.Supp.3d at 688 n.11 (emphases added);
>
> - that there was "*no evidence* that [Clearlake or Tarcona] *required* O.W. to use [NuStar] to satisfy its obligations," *id*. at 688 (emphases added);
>
> - that, although "aware of [NuStar's] identit[y]," Clearlake/Tarcona only "tacitly 'selected' [NuStar]," *id*. at 688 n.11; and
>
> - that "the undisputed evidence" was "that [Clearlake/Tarcona] did not require O.W. to use [NuStar]," *id*. at 690.

We see no error in these findings. Although we reach a different conclusion on the subcontractor-exception issue today in the appeals brought by USOT, we do so based on differences between the records in the NuStar and USOT cases.

In the USOT cases, Hapag-Lloyd Aktiengesellschaft ("Hapag"), the owner or charterer of the USOT-supplied vessels, issued to O.W. Bunker Germany GmbH ("O.W. Germany") purchase orders that named USOT as the physical supplier. *See USOT*, --- F.3d at xxx. And in response to USOT's motion for summary judgment relying on the purchase orders, Hapag described these orders as meaning that O.W. Germany was "permitted" to use some other supplier "*if* USOT was unable to act as the physical supplier," *id*. at xxx (internal quotation marks omitted) (emphasis in *USOT*).

We see no similar evidence or admission by Clearlake in the present case. Whereas the record in the USOT cases contained copies of the purchase orders issued by the owner/charterer Hapag, *see*, *e.g.*, *Clearlake*, 239 F.Supp.3d at 682 ("The agreements between Hapag[] and O.W. Germany identify O.W. Germany as the seller, Hapag[] as buyer, and USOT as supplier."), NuStar here has pointed not to purchase orders issued by Clearlake or Tarcona but rather to the sales order confirmations issued by O.W. Switzerland. The district court stated that "[t]he Clearlake-O.W. Switzerland transactions are memorialized in . . . sales order confirmations," and it cited only to O.W. Switzerland documents. *Id*. at 680. Thus, we are aware of no evidence to suggest, much less confirm, that Clearlake or Tarcona

identified NuStar as the physical supplier in any purchase order. Nor has NuStar pointed to any other evidence in the record to support a conclusion that Clearlake or Tarcona directed O.W. Switzerland to use NuStar as the physical supplier.

The closest that NuStar came to claiming that Tarcona directed the use of NuStar was asserting (a) that, several days in advance of delivery to the Clearlake Vessels, "Tarcona *knew* . . . that NuStar was the designated physical supplier of the bunkers it had ordered" (*see* NuStar Rule 56.1 Statement ¶¶ 11, 12 (emphasis added)), and (b) that Tarcona "*accepted* NuStar as the physical supplier of the bunkers it had ordered" (*id*. ¶ 13 (emphasis added)). As discussed above, however, evidence merely of such awareness and acceptance is insufficient to show that the vessel owner/charterer or its agent controlled the selection of the physical supplier or that they ordered or directed that NuStar be used.

CONCLUSION

We have considered all of NuStar's arguments on this appeal and have found them to be without merit. The partial final judgment is affirmed.

14